Raymond D. Powers
ISB # 2737; rdp@powerstolman.com
Portia L. Rauer
ISB # 7233; plr@powerstolman.com
POWERS TOLMAN FARLEY, PLLC
702 West Idaho Street, Suite 700
Boise, ID 83702
Post Office Box 9756
Boise, ID 83707
Telephone: (208) 577-5100
Facsimile: (208) 577-5101
W:\41\41-036\Motions\MTD\Memo.docx

Attorneys for Gerald E. Mortimer, M.D. and Linda G. McKinnon Mortimer

## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLI ROWLETTE, an individual, SALLY ASHBY, an individual, and HOWARD FOWLER, an individual, | Case No.  4:18-CV-00143-DCN |
| **Plaintiffs,** | **MEMORANDUM IN SUPPORT OF DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S MOTION TO DISMISS** |
| vs. | |
| GERALD E. MORTIMER, M.D., LINDA G. McKINNON MORTIMER, and the marital community comprised thereof, and OBSTETRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A. an Idaho professional corporation, | |
| **Defendants.** | |

**COME NOW**, Gerald E. Mortimer, M.D. and Linda G. McKinnon Mortimer (hereinafter "Defendants"), by and through their undersigned counsel of record, Powers Tolman Farley, PLLC, and respectfully submit this memorandum in support of Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## INTRODUCTION

Plaintiffs filed suit against Defendants on March 30, 2018 [Dkt. 1] alleging medical malpractice, lack of informed consent, fraud, battery, intentional and negligent infliction of emotional distress, breach of contract, and violation of Idaho's consumer protection act. Plaintiffs assert that Gerald E. Mortimer, M.D. (Dr. Mortimer) breached the standard of care when he used his own genetic material to artificially inseminate Plaintiff Ashby in 1980, without Ashby or Fowler's knowledge, resulting in the birth of Rowlette in May of 1981.

Through this motion Defendants move for dismissal of Plaintiffs' Complaint on the following grounds:

1)      Plaintiffs' claims are barred by the statute of limitation;
2)      Plaintiffs' claim of lack of informed consent fails to state a claim upon which relief can be granted;
3)      Plaintiffs' claims of fraud, breach of contract, emotional distress, battery, and consumer protection act violation are precluded by the claim of malpractice;
4)      Plaintiffs failed to properly plead a cause of action for emotional distress;
5)      Plaintiffs failed to state a valid claim against Linda G. Mortimer; and
6)      Plaintiffs Fowler and Rowlette lack standing and are not real parties in interest.

Even when construing Plaintiffs' allegations as true, their Complaint fails to state claims upon which relief can be granted and should be dismissed.

## ARGUMENT AND ANALYSIS

Under Rule 12(b)(6), Fed. R. Civ. P., a party can move for dismissal if the complaint fails to state claims upon which relief can be granted.  A motion to dismiss will only be granted if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face. *Bodybuilding.com LLC v. PhD Fitness, LLC*, 1:16-CV-00271-EJL-CWD, 2007 WL 1013863 at *1-2, (D. Idaho. Mar. 15, 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  A judgment on the pleadings may be granted only when it appears beyond a doubt that the claiming party can prove no set of facts in support of his claim which would entitled him to relief.  *Bodybuilding.com LLC,* at *2. When deciding a motion for judgment on the pleadings, the court assumes the allegations in the complaint are true and construes them in the light most favorable to the non-moving party. *Id.* A judgment on the pleadings is appropriate when, taking all allegations in the complaint as true, the moving party is entitled to judgment as a matter of law. *Id.*  The court is not, however, bound to accept as true a legal conclusion couched as a factual allegation; therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Id.*

As set forth herein, Plaintiffs have failed to state claims upon which relief can be granted, warranting dismissal of their Complaint.

1.   **PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATION.**

When a court has subject matter jurisdiction over state law claims based on diversity jurisdiction, a court must apply state law to any substantive issue.  28 U.S.C. § 1332; *Miesen v. Henderson*, 1:10-cv-00404-CWD, 2017 WL 4270630, at *3, (D. Idaho, Sept. 26, 2017) (internal citations omitted.)  Although statutes of limitation are ordinarily considered procedural, in diversity actions they are considered substantive when outcome-derivative. *Id.* According to Idaho law, civil actions must be commenced within periods prescribed by the Idaho Code, except when a specific statute of limitation period is established by another statute. *Id*.  When multiple claims are set forth in a complaint, a court must separately examine the claims to determine the statute of limitation for each claim. *Id*.  Idaho's statutes of limitation bar Plaintiffs' claims, requiring dismissal of this action.

a.   **Medical Negligence Claim Is Not Tolled By Fraudulent Concealment Exception And Is Barred By The Statute Of Limitation.**

According to Idaho Code § 5-219(4), an action to recover damages for medical malpractice must be commenced within two (2) years from the occurrence, act or omission complained of. Idaho Code § 5-219(4) provides two exceptions related to when a cause of action begins to accrue: when a foreign object is left in a patient's body and when the fact of damage is fraudulently and knowingly concealed from the patient.  An action brought under the fraudulent concealment exception must be commenced within one (1) year following the date of accrual. *Id*.

When the fraudulent concealment exception applies, the cause of action begins to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry of the alleged malpractice, not when the injured party knows or was put on inquiry of the fact of damage. *Bliss Valley Foods, Inc. v. Walker*, 127 Idaho 12, 15, 896 P.2d 338, 341 (1998).

States that have enforced similar fraudulent concealment exceptions require the defendant to have a legal duty to affirmatively act or inform before fraudulent concealment can be considered. *McDougal v. Weed*, 945 P.2d 175, 179 (Utah Ct. App. 1997); *Chapman By and Through Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989) ("neither material omissions nor fraudulent affirmative statements are actionable absent a duty to speak the truth.").

The fraudulent concealment exception does not apply to extend the statute of limitation since Dr. Mortimer had no duty to reveal the identity of the semen donor.

Plaintiffs claim Dr. Mortimer owed them certain duties as Ashby's treating physician during her artificial insemination procedure.[1] They do not allege that Dr. Mortimer had a duty to reveal the identity of the semen donor. According to Plaintiffs' Complaint, the identity of the donor of the genetic material was to remain anonymous.[2] Critically, it was Ashby and Fowler who actively worked to conceal the nature of Rowlette's conception, and their concealment was the proximate cause that delayed Rowlette's alleged "discovery" of her biological father until July 2017.

It is axiomatic that an individual with an obligation to conceal information cannot fraudulently conceal that same information. Dr. Mortimer was bound to ensure the donor's identity remained anonymous, and Dr. Mortimer met that obligation. Notably, Ashby could have withdrawn her requirement of donor anonymity if she desired, but she did not do so.

Moreover, paternity identification through DNA genetic testing has been available for decades. For example, in *Henderson v. Smith*, 128 Idaho 444, 915 P.2d 6 (1996), a case from 1996, the court noted that the putative father was given the option of DNA testing to prove or disprove paternity and opted not to do so. Here, had Plaintiffs desired DNA information regarding the identity of Rowlette's biological father they could have had DNA testing performed in 1996 to determine if Fowler was her natural father. In the exercise of reasonable care, as is required to prove fraudulent concealment, Plaintiffs could have pursued the identity of Rowlette's natural father had they wanted that information. To the contrary, however, Ashby and Fowler set about concealing the fact that Rowlette was conceived via artificial insemination with anonymous donor semen, hiding from her the fact that she was not truly her father's biological daughter as she had been led to believe for 37 years.

Therefore, Plaintiffs' claim of fraudulent concealment does not toll the statute of limitation and, their medical negligence claim is time barred.

---

[1] Complaint (Dkt. 1), ¶ 18.
[2] Complaint (Dkt. 1), ¶ 12.

**b.     Lack Of Informed Consent Claim Is Barred By The Statute Of Limitation.**

To establish a claim of informed consent, the plaintiff must establish three elements: (1) nondisclosure; (2) causation; and (3) injury arising from the nondisclosure. *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007).  Claims for injuries arising from informed consent must be commenced with two (2) years of the act, occurrence or omission complained of. Idaho Code § 5-219(4). Importantly, however, the two exceptions discussed above apply *exclusively* to claims of professional malpractice. *Glaze v. Deffenbaugh*, 144 Idaho 829, 832, 172 P.3d 1104, 1107 (2007). Although informed consent involves a physician's act or omissions, it is a separate claim from negligence. *Foster v. Traul*, 141 Idaho 890, 894, 120 P.3d 278, 282 (2005) (holding physician may be held liable under the doctrine of informed consent even if there was no negligence in the treatment of the patient).  Thus, the exceptions only apply to the medical negligence cause of action – not a lack of informed consent cause of action.

Plaintiffs allege Dr. Mortimer failed to disclose that he used his own genetic material to inseminate Ashby. There is no dispute that if such an omission occurred, it occurred when Ashby was artificially inseminated in the summer of 1980.[3] Since Idaho Code § 5-219(4) does not provide an exception to when the cause of action begins to accrue for an informed consent claim, Plaintiffs' claim undoubtedly began to accrue in 1980. Since this action was not commenced until 2017, Plaintiffs' claim of lack of informed consent is time barred and should be dismissed.

**c.     Breach Of Contract Claim Is Barred By The Statute Of Limitation.**

A claim for breach of contract must be brought within five (5) years of when the action begins to accrue. Idaho Code § 5-216. The action begins to accrue upon the breach, even though the damage from the breach may not be immediately known. *Mason v. Tucker and Associates,* 125 Idaho 429, 436 (Ct. App. 1994). Moreover, there is no discovery rule in a breach of contract action that tolls the applicable statute of limitation.  Idaho Code § 5-216.

Here, there can be no dispute that if an alleged contract between Plaintiffs and Dr. Mortimer existed, it was breached in the summer of 1980, approximately 37 years before the Plaintiffs commenced this action. Since there is no discovery rule that could toll a claim of breach of contract, Plaintiffs' claim for breach of contract is time barred, and should be dismissed.

---

[3] Complaint (Dkt. 1), ¶ 18.

**d.    Battery Claim Is Barred By The Statute Of Limitation.**

Civil battery consists of both intentional and unpermitted contact upon a person that is either unlawful, harmful, or offensive. *Neal v. Neal*, 125 Idaho 617, 622, 873 P.2d 871, 846 (1994). Intent relates to the act performed, not the injury suffered. *White v. University of Idaho*, 118 Idaho 400, 402-03, 797 P.2d 108, 110-11 (1990). A claim of battery must be brought within two (2) years from when the cause of action began to accrue. I.C. § 5-219(5). "A cause of action for battery accrues when the wrongdoing occurs, not when it is discovered." *Glaze v. Deffenbaugh*, 144 Idaho 829, 832, 172 P.3d 1104, 1107 (2007). There is no exception that would toll the statute of limitation for a battery claim. *Id.*

In the *Glaze* case, two sisters brought civil battery claims against their father for offensive sexual acts that occurred 25 years prior to the filing of their claims. *Id.* The sisters further claimed their father concealed the facts surrounding the battery, and therefore the statute of limitation should be tolled. *Id.* The court explained, however, that the fraudulent concealment exception applies exclusively to matters involving professional malpractice and could not be used to toll allegations of battery. *Id.* Since the father's alleged molestation occurred 25 years prior and the statute of limitation could not be tolled, the sisters' battery claims were time barred. *Id.*

The same result should occur in the present case.  There is no dispute that any allegedly offensive contact by Dr. Mortimer upon Ashby would have occurred in the summer of 1980. Plaintiffs' failure to bring the present action prior to the summer of 1982 has caused their battery claim to be time barred, and therefore Plaintiffs' battery claim should be dismissed.

**e.    Intentional Infliction Of Emotional Distress Claim Is Barred By The Statute Of Limitation.**

To bring a claim of intentional infliction of emotional distress (IIED), a claimant must establish four elements, specifically: (1) the defendant's conduct was intentional or reckless; (2) defendant's conduct was extreme and outrageous; (3) there is a connection between the defendant's conduct and the plaintiff's distress; and (4) plaintiff's emotional distress is severe. *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003). A claim of IIED must be commenced within two (2) years of the occurrence, act or omission complained of. Idaho Code § 5-219; *Johnson v. McPhee,* 147 Idaho 455, 463, 210 P.3d 563, 571 (Ct. App. 2009). The intentional *conduct* of the defendant triggers the accrual of the statute of limitation, not when the plaintiff suffers an injury. *Id.* Importantly, exceptions in Idaho Code § 5-219(4) that allow for the

tolling of the statute of limitation apply only to claims of malpractice. *Glaze v. Deffenbaugh*, 144 Idaho 829, 832, 172 P.3d 1104, 1107 (2007).

Here, Plaintiffs allege Dr. Mortimer's artificial insemination of Ashby with his own genetic material was both intentional and outrageous. Yet, Plaintiffs also acknowledge the alleged intentional conduct occurred in 1980. Under the statute of limitation and the holding in *Johnson*, it is the occurrence or act that triggers the statute of limitation for IIED claims. It goes without saying that, if Dr. Mortimer's alleged conduct was an intentional act to inflict emotional distress, infliction of the emotional distress would have taken place at the time of the act. By Plaintiffs' own admission, any emotional distress related to Dr. Mortimer's alleged acts was not experienced for 37 years. Consequently, the Plaintiffs' claim of IIED is barred by Idaho Code § 5-219(4).

   f.   **Negligent Infliction Of Emotional Distress Claim Is Barred By The Statute Of Limitation.**

Negligent infliction of emotional distress (NIED) is simply a category of negligence. *Johnson*, 147 Idaho at 466, 210 P.3d at 574. It requires the same elements as common law negligence, specifically that: (1) defendant owes a legal duty; (2) defendant breached that duty; (3) there is a causal connection between the defendant's conduct and the plaintiff's injury; and (4) plaintiff suffered actual loss or damage. *Frogley v. Meridian Joint School Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013). A claim of NIED must be commenced within two (2) years of the occurrence, act or omission complained of. Idaho Code § 5-219(4).

Plaintiffs' NIED and IIED claims share the same fate. Like Plaintiffs' IIED claim, their NIED claim stems from alleged conduct of Dr. Mortimer that occurred in 1980. The Plaintiffs' brought their claim approximately 35 years too late and is therefore time barred.

   g.   **Idaho Consumer Protection Act Claim Is Barred By The Statute Of Limitation.**

The statute of limitation for a claim under the Idaho Consumer Protection Act (IPCA) is two (2) years, and the statute begins to run when the cause of action accrues. Idaho Code § 48-619; *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 409 P.3d 789, 793-94 (2017). A cause of action under the Idaho Consumer Protection Act begins to accrue when a plaintiff suffers an "ascertainable loss." *Id.*

In *Swafford v. Huntsman*, plaintiff sued defendant for breach of contract and violation of the ICPA related to defendant's failure to fully comply with the masterplan for a subdivision. *Id.* Swafford alleged he was told he would have ingress and egress from a certain street to his property

in the subdivision. *Id.* at __, 409 P.3d at 791. Instead of providing street access, the area was improved to include landscaping, walking path, and trees. *Id.* The court held that Swafford's IPCA claim was barred by the two-year statute of limitation and explained that the cause of action began to accrue when the improvements were completed in the subdivision, implying Swafford's loss occurred when he should have known he did not have the street access he believed he was promised. *Id.* at ___, 409 P.3d at 793-94. It was then that Swafford would have suffered an ascertainable loss and the ICPA cause of action began to accrue. *Id.*

Here, Plaintiffs claim they believed Ashby would have been artificially inseminated with a mix of genetic material from Fowler and "a college student with brown hair, blue eyes, and a height over six (6) feet tall."[4] If Plaintiffs suffered the type of "loss" contemplated under the ICPA, then Plaintiffs' loss began to accrue when Rowlette reached adulthood and either 1) did not look like Fowler, 2) did not have brown hair, 3) did not have blue eyes and 4) was not over six feet tall. As in *Swafford*, the loss accrued when Rowlette's physical characteristics were fully developed. Rowlette's genetic make up was complete and became visible when she reached adulthood, which was more than two years ago since she is now 37 years old. Plaintiffs acknowledge they believed Fowler would be Rowlette's biological father or an anonymous donor who had brown hair, blue eyes, and was over six feet tall would be Rowlette's biological father. There are no facts alleged in the Complaint to establish that Rowlette does not have the physical characteristics they describe.

Any "ascertainable loss" Plaintiffs suffered would be based on the physical characteristics they described and would have manifested themselves by the time Rowlette was an adult; therefore, Plaintiffs' loss, if any, is time barred and their ICPA claim should be dismissed.

## 2.    LACK OF INFORMED CONSENT CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Informed consent is the general principle that a physician owes a duty to disclose all material risks that could arise from a particular treatment. *Sherwood v. Carter*, 119 Idaho 246, 251, 805 P.2d 452, 457 (1991), abrogated by *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). A patient's consent to a medical procedure is only valid if the physician discloses, "pertinent facts respecting the need for, the nature of, and the significant risks ordinarily attendant upon such a person receiving such care." *Id.*; Idaho Code § 39-4506. Pertinent facts are facts

---

[4] Complaint (Dkt. 1), ¶ 60.

illustrating the significant risks ordinarily involved in a particular procedure that a reasonable physician in good standing in the same practicing community would disclose to his patient. *Sherwood*, 119 Idaho at 256, 805 P.2d 462. A patient bringing a claim of informed consent must show that had they been informed of undisclosed material risks, they would not have consented to the procedure. *Id.*; *Foster*, 145 Idaho at 31, 175 P.3d at 193; *Puckett v. Verska*, 144 Idaho 161, 165, 158 P.3d 937, 941 (2007) (informed consent claim dismissed because there was no dispute that surgeon informed patient of all surgical risks).

Here, Plaintiffs fail to identify *any* material risks that Dr. Mortimer failed to disclose. Although all pregnancies and births are accompanied by well-known risks, Plaintiffs do not allege any of these risks were concealed from them, nor do they allege any complications involved in Ashby's pregnancy and subsequent birth of Rowlette. In fact, Ashby sought out treatment from Dr. Mortimer for purposes of becoming pregnant and having a child. Ashby received precisely what she wanted, a healthy child.

Still, Plaintiffs complain that Dr. Mortimer, "failed to disclose to Ms. Ashby and Mr. Fowler that he was using his own genetic material to inseminate Ms. Ashby."[5] Plaintiffs fail to articulate, however, how the identity of the sperm donor was an undisclosed risk, nor do Plaintiffs state how use of Dr. Mortimer's genetic material put them at some undisclosed risk. The donor was required to remain anonymous, and thus could not be disclosed in any circumstance. Interestingly, even if Dr. Mortimer used his own genetic material, Dr. Mortimer's knowledge of his own physical health would *decrease* material risks associated with the usage of random, unknown genetic material.

Ultimately, Plaintiffs complain not of Dr. Mortimer's nondisclosure of material risks, but of his alleged failure to abide by their preferred characteristics in selecting an anonymous donor. Plaintiffs' inability to identify any risks Dr. Mortimer failed to disclose causes Plaintiffs' claim of informed consent to fail as a matter of law.

## 3.   WHERE THE GRAVAMEN OF THE CLAIM SOUNDS IN MALPRACTICE, ALL OTHER CAUSES OF ACTION ARE PRECLUDED AND SHOULD BE DISMISSED.

When the gravamen of a claim relates to a medical professional's misconduct resulting in a patient suffering damage, it is an action for malpractice. *Hoover v. Hunter*, 150 Idaho 658, 663, 249 P.3d 851, 856 (2011).  Idaho Code § 6–1012 applies to any case, claim or action for damages due to

---

[5] Complaint (Dkt. 1), ¶ 32

injury to or death of any person, brought against any physician and surgeon or other provider of health care on account of the provision of or failure to provide health care. *Id.* The language of the statute clearly treats the provision of health care as a single act and not a series of steps, each of which must be analyzed to determine if it involved professional judgment. *Id.* Because the claimed injuries in this case were due to the provision or failure to provide health care, Idaho Code § 6–1012 applies and all other claims are precluded.

### a.    Fraud Claim Cannot Co-Exist With Malpractice Claim And Should Be Dismissed.

A claim of fraud is precluded when the gravamen of the action lies in medical malpractice. *Hoover v. Hunter*, 150 Idaho 658, 663, 249 P.3d 851, 856 (2011).

In *Hoover*, the plaintiff brought claims against a physician for negligent care that resulted in the death of a family member.  150 Idaho at 661, 249 P.3d at 854.  Plaintiff also brought a fraud claim alleging the physician made misrepresentations regarding his diagnosis and treatment. *Id.* The trial court dismissed plaintiff's fraud claim reasoning that since the claims were related to the physician's standard of care, and the claimed damages were for wrongful death, Idaho Code § 6-1012 governed the matter exclusively. *Id.* The court's basis for dismissing a claim of fraud where the action stems from medical malpractice was founded in a prior decision dismissing a breach of contract claim when the gravamen of the case was malpractice. *Id.*; *see also Lapham v. Steward*, 137 Idaho 582, 588-89, 51 P.3d 396, 402-03 (2002).

The issue in the present case is identical to the issue in *Hoover*. Plaintiffs have brought both malpractice and fraud claims against Dr. Mortimer related to his medical treatment of Ashby.  The gravamen of Plaintiffs' Complaint is the medical treatment Ashby received from Dr. Mortimer. Clearly, Idaho Code § 6-1012 governs the pending matter. Allowing Plaintiffs' fraud claim to remain would conflict with the clearly articulated evidentiary standards of Idaho Code § 6-1012, and therefore Plaintiffs' fraud claim should be dismissed.

### b.    Breach Of Contract Claim Cannot Co-Exist With Plaintiffs' Malpractice Claim And Should Be Dismissed.

When the gravamen of the claim is based on the negligence of a health care professional, the plaintiff is precluded from bringing a contract claim. *Conner v. Hodges*, 157 Idaho 19, 26, 333 P.3d 130, 137 (2014).  The court looks to the complaint to determine whether the gravamen of the action consists of a breach of a contract or the duty imposed by law in relation to the manner of its performance. *Id.* at 25, 333 P.3d at 136.  When the basis of the action is the provision of or failure

to provide health care, then the gist of the action is negligence and not a breach of the contract. *Id.*; *see also Trimming v. Howard*, 52 Idaho 412, 415, 16 P.2d 661, 662 (1932); *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 350, 33 P.3d 816, 824 (2001). Allowing parties to bring alternative claims of medical malpractice and breach of contract concurrently would allow plaintiffs to circumvent the requirements of Idaho Code § 6-1012, which would be an encroachment on a clear mandate of the state legislature. *Keyser v. St. Mary's Hosp., Inc.*, 662 F. Supp. 191, 194 (D. Idaho 1987).

In *Conner*, the complaint alleged that Dr. Hodges breached his contract with Conner by failing to perform a tubal ligation. 157 Idaho 19, 333 P.3d 130 (2014). The Supreme Court upheld the trial court's dismissal of the breach of contract claim and noted the case was an action for damage due to injury on account of the provision of or failure to provide health care. *Id.* The appellate court found the trial court properly concluded that the gravamen of plaintiff's claim was a failure to provide proper health care and plaintiff was precluded from bringing a breach of contract claim. *Id.*

Likewise, in *Bishop v. Owens*, the court explained: "The fact that a proponent labels his or her action as sounding in contract as well as malpractice does not make the underlying action a contract. The 'theory' of relief sought is not different." 152 Idaho 616, 272 P.3d 1247, 1252 (2011).

Here, Plaintiffs' first cause of action is for medical negligence. Their primary contention is that Dr. Mortimer breached the standard of care by inseminating Ashby with his own genetic material.[6] Clearly the Plaintiffs' Complaint is centered on Dr. Mortimer's provision of healthcare; thus, Plaintiffs' claim for breach of contract is precluded and should be dismissed.

c. **Emotional Distress And Battery Claims Cannot Co-Exist With Malpractice Claim And Should Be Dismissed.**

As argued above, where the gravamen of an action is in malpractice, a plaintiff's claims are subject to Idaho Code § 6-1012.

The broad language of Idaho Code § 6-1012 subjects nearly all claims involving physicians and their patients to the requirements of Idaho Code § 6-1012, including claims of intentional and negligent infliction of emotional distress, as well as battery. Plaintiffs are precluded from asserting simultaneous claims of intentional torts against physicians, as such claims would undermine the

---

[6] Complaint (Dkt. 1), ¶ 27-30.

evidentiary requirements of Idaho Code § 6-1012. *See Hall v. Rocky Mountain Emergency Physicians, LLC*, 155 Idaho 322, 326, 312 P.3d 313, 317 (2013) (citing *Litz v. Robinson,* 131 Idaho 282, 955 P.2d 113 (Ct. App. 1997) (finding plaintiff was "artfully labeling" cause of action an intentional tort to avoid the requirements of I.C. §6-1012.)) Whenever plaintiffs have attempted to assert claims of IIED against physicians, courts have simply construed such claims as claims of malpractice. *Id*.

In *Hall*, plaintiff alleged a physician assistant fondled her breast during a routine examination. *Hall* 155 Idaho at 316, 312 P.3d at 325. Plaintiff brought several causes of action, including battery and intentional infliction of emotional distress against the physician assistant who treated her. *Id*. at 326, 312 P.3d at 317. She did not include a cause of action for medical malpractice. *Id*. The defendants moved for summary judgment on various grounds, including that the action was governed by Idaho Code §§ 6-1012 and 6-1013 and required expert testimony on the standard of healthcare practice. The Idaho Supreme Court upheld the grant of summary judgment by the trial court and confirmed that Idaho Code § 6-1012 controlled the proceedings and could not be bypassed. *Id*. at 317, 312 P.3d at 326. As a result, the court viewed plaintiff's action as one in malpractice and dismissed the action due to plaintiff's failure to satisfy the expert requirements of Idaho Code § 6-1013. *Id*. The intentional tort claims did not survive.

A similar result was reached in *Litz*, where the plaintiff attempted to label his claim against his physician as one for IIED and not medical negligence. *Litz*, *supra,* 131 Idaho at 285, 955 P.2d at 116. The court prevented plaintiff from "artfully labeling" his cause of action as one for IIED to avoid the more stringent requirements of Idaho Code § 6-1012. *Id*. The court found that plaintiff's claims were based on traditional notions of negligence. *Id*. The trial court granted summary judgment on the basis that plaintiff failed to provide proper expert testimony as required under Idaho Code §§ 6-1012 and 6-1013. *Id*. The emotional distress claim did not survive.

Based on the foregoing, it is clear from both Idaho Code § 6-1012 and subsequent case law that any matter related to alleged misconduct of healthcare providers is subject to Idaho Code §§ 6-1012 and 6-1013, and other claims are precluded, no matter how they may be titled.

In the present case, Plaintiffs' emotional distress claims and battery claims are similar to the claims in *Hall* and *Litz* since they arise from Dr. Mortimer's conduct as Ashby's physician. Because Plaintiffs have asserted Dr. Mortimer was negligent in providing healthcare, they cannot simultaneously bring emotional distress and battery claims as alternative theories. Importantly, Plaintiffs are not claiming a separate type of remedy related to their emotional distress and battery

claims, further warranting dismissal.  Plaintiffs' claims arise from the provision of medical care, Idaho Code §§ 6-1012 and 6-1013 apply and, as such, the unique requirements therein must govern the matter. Plaintiffs cannot circumvent those requirements by titling claims under other alternative theories, such as emotional distress or battery. Plaintiffs' emotional distress and battery claims are therefore precluded and should be dismissed.

      **d.**    <u>**Consumer Protection Act Claim Cannot Co-Exist With Malpractice Claim And Should Be Dismissed.**</u>

As argued above, Idaho Code § 6-1012 requires unique evidentiary standards for claims raised against physicians and other healthcare providers. Idaho Code § 6-1012; *Keyser v. St. Mary's Hosp., Inc.*, 662 F. Supp. 191, 194 (D. Idaho 1987). These unique standards preclude certain claims from arising in the medical context, including consumer protection claims. Applying the rationale discussed above, claims arising under the Idaho Consumer Protection Act ("ICPA") are precluded. *Keyser,* 662 F. Supp. at 194.

In *Keyser*, plaintiffs brought both malpractice claims and ICPA claims against their physician. *Id*. Plaintiffs alleged the physician's treatment fell below the standard of care, and that the physician violated the ICPA by holding himself out as being knowledgeable and capable of treating the plaintiff's condition. *Id.* Relying upon the reasoning in *Trimming v. Howard*, 52 Idaho 412, 16 P.2d 661 (1932), the court reiterated that "[t]he original injury, be it caused by carelessness, negligence, misconduct or whatnot, remains the sole cause of action" and determined the ICPA claim was barred. *Id.* The court articulated the rationale behind the exclusion of alternative causes of action when the gravamen of a claim is malpractice, reasoning that allowing claims other than malpractice would allow plaintiffs an avenue to sidestep the clear mandate of I.C. § 6-1012. *Id.* Consequently, any matter involving allegations laid against a physician by a patient will almost certainly trigger an action in malpractice to the exclusion of all other claims. *Id.*, 662 F. Supp. at 194.

The present case mirrors *Keyser*. Plaintiffs have brought a claim for violation of the consumer protection act, alleging Dr. Mortimer engaged in unfair and deceptive practices.[7] Yet, Plaintiffs' primary contention is that Dr. Mortimer failed to provide adequate healthcare as required by an OB/GYN in Idaho Falls, Idaho in 1980.[8]  The original injury is the gravamen of Plaintiffs' claims.

---

[7] Complaint (Dkt. 1), ¶ 59.
[8] Complaint (Dkt. 1), ¶¶ 27-28.

Consequently, Plaintiffs are precluded from asserting claims under the Idaho Consumer Protection Act for the same conduct and the claim should be dismissed.

**4.**     <u>**PLAINTIFFS FAILED TO PROPERLY PLEAD THEIR EMOTIONAL DISTRESS CLAIMS.**</u>

The absence of allegations setting forth a physical manifestation of emotional distress warrants dismissal of emotional distress claims. *Hopper v. Swinnerton*, 155 Idaho 801, 810, 317 P.3d 698, 707(2013). A cause of action for NIED will not be recognized where there is no physical injury to the complainant. *Herrera v. Conner,* 111 Idaho 1012, 1023, 729 P.2d 1075, 1086 (Ct. App. 1986

To bring a claim of IIED, a claimant must establish four elements, specifically: (1) the defendant's conduct was intentional or reckless; (2) defendant's conduct was extreme and outrageous; (3) there is a connection between the defendant's conduct and the plaintiff's distress; and (4) plaintiff's emotional distress is severe. *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003).

A claim of NIED requires the same elements as common law negligence: (1) defendant owes a legal duty; (2) defendant breached that duty; (3) there is a causal connection between the defendant's conduct and the plaintiff's injury; and (4) plaintiff suffered actual loss or damage. *Frogley v. Meridian Joint School Dist. No.* 2, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013).

In addition to establishing the elements of an emotional distress claim, Idaho courts require claimants to suffer from emotional distress so severe the distress is manifested in physical symptoms. *Hopper v. Swinnerton*, 155 Idaho 801, 810, 317 P.3d 698, 707(2013); *Stanton v. Battelle Energy Alliance*, LLC, 83 F. Supp.3d 937, 942 (D. Idaho 2015). Requiring physical manifestations of emotional distress offers proof that the mental harm complained of is genuine and not imagined. *Frogley v. Meridian Joint Sch*. Dist. No. 2, 155 Idaho 558, 314 P.3d 613, 624 (2013).

For example, in *Hopper*, plaintiff's IIED claim stated that they had suffered emotional distress without specifying *any* physical injury or symptom arising from the alleged emotional distress. *Hopper*, 155 Idaho at 810, 317 P.3d at 707. The absence of any claims of physical injury arising from the plaintiff's emotional distress caused the court in *Hopper* to dismiss plaintiff's IIED claim. *Id.* Similarly, in *Herrera v. Conner,* 111 Idaho 1012, 1023, 729 P.2d 1075, 1086 (Ct. App. 1986), the complaint merely stated that the plaintiff suffered "mental pain and anguish," without any allegations of physical injury, consequently the court found that the plaintiff failed to properly plead a claim involving emotional distress. *Id.*

Here, Plaintiffs have failed to plead <u>any</u> physical symptoms related to the alleged emotional distress suffered as a result of Dr. Mortimer's actions. Plaintiffs claim to have been "devastated" and to have "suffered immeasurably" upon learning the identity of Rowlette's biological father, but like the plaintiff in *Herrera*, Plaintiffs' alleged devastation falls short of the minimal requirements. Without citation to any physical manifestation of emotional distress, Plaintiffs have failed to state a claim for emotional distress, and their claims should therefore be dismissed as a matter of law.

**5.    PLAINTIFFS HAVE FAILED TO ALLEGE *ANY* CLAIMS AGAINST LINDA MORTIMER.**

Rule 8(a)(2), Fed. R. Civ. P., requires pleadings to contain, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Statements of the claim are sufficient when the statement provides the defendant fair notice of the claims, and the factual basis for those claims. *Headwaters Const. Co. v. National City Mortg. Co.*, 720 F. Supp. 2d 1182, 1186 (D. Idaho 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955 (2007). The complaint must contain facts that, if taken as true, would create a "facial plausibility" that the defendant is guilty of the alleged misconduct. *Id*. The plausibility requirement established by the court in *Twombly* requires something more than a "sheer possibility" that the defendant has acted unlawfully. *Id*.

Here, Plaintiffs have failed to plead *any* facts that suggest misconduct by Ms. Mortimer. Rather, Plaintiffs name Ms. Mortimer as a party on the singular basis that Ms. Mortimer is married to Dr. Mortimer.  Even a cursory reading of Plaintiffs' factual allegations leads to but one conclusion – the misconduct they allege is against Dr. Mortimer, not his wife.  <u>All</u> acts and omissions complained of are related to Dr. Mortimer's care of Ashby as her OB/GYN.  Under the holding in *Twombly*, Plaintiffs are required to plead facts specifically related to misconduct by Mrs. Mortimer or plead facts of derivative liability to put Defendants on notice as to her misconduct.  It is not enough to assert she is liable because of a "benefit of the marital property."[9] Plaintiffs' failure to allege any misconduct or derivative liability against Mrs. Mortimer causes Plaintiffs' claims against her to lack the "facial plausibility" required by Rule 8(a)(2), and therefore any claims asserted against Ms. Mortimer require dismissal from this matter.

Moreover, the mere inclusion of a defendant's spouse does not affect the status of the couple's community property. *Twin Falls Bank & Trust Co. v. Holley,* 111 Idaho 349, 353, 723 P.2d

---

[9]Complaint (Dkt. 1), ¶ 5.

893, 897 (1986). Consequently, Plaintiffs' attempt to include Ms. Mortimer in their claims is improper and warrants dismissal. *See, Id*. Idaho Code § 32-912.

**6.**   **PLAINTIFFS ROWLETTE AND FOWLER LACK STANDING TO BRING THIS ACTION.**

Determination of standing in a diversity action is based on state law. *Sunwest Associates v. Davis*, 74 F.3d 1246 (9th Cir. 1996).

**a.**   **Rowlette And Fowler Cannot Establish That Dr. Mortimer Owed Them A Duty.**

In any medical negligence action, the plaintiff must establish that: (1) defendant owed a duty, recognized by law, requiring defendant to conform to a certain standard of care; (2) the defendant breached that standard of care;(3) defendant's breach caused the complained of injury; and (4) the injury caused loss or damage. *Schmechel v. Dille*, 148 Idaho 176, 187, 219 P.3d 1192, 1203 (2009). Whether a duty exists in a particular context is a question of law. *Rountree v. Boise Baseball* LLC, 154 Idaho 167, 171, 296 P.3d 373, 377 (2013).

Idaho has not had occasion to address the specific question of whether a doctor owes a duty of care in negligence to non-patient third-parties, such as a patient's family members.   Other jurisdictions have held, however, that a physician-patient relationship is essential to a claim for medical malpractice.  A plaintiff must prove the existence of a physician-patient relationship before a duty can be established. *See Jennings v. Badgett*, 230 P.3d 861, 865-66 (Okla. 2010); *Mead v. Legacy Health System*, 283 P.3d 904, 909-10 (Ore. 2010); *Seeber v. Ebeling*, 141 P.3d 1180 (Kan. Ct. App. 2006); *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 2005 )(establishing a physician-patient relationship is pre-requisite for a malpractice claim); *Gross v. Burt*, 149 S.W.3d 213 (Tex. Ct. App. 2004); *Millard v. Corrado*, 14 S.W.3d 42 (Mo. Ct. App. 1999); *Roberts v. Hunter*, 465 S.E.2d 797 (S.C. 1993); *see also Bishop v. Owens*, 152 Idaho 616, 620, 272 P.3d 1247, 1257 (2011) (requiring an attorney-client relationship before a client could establish a malpractice claim).

Application of Idaho's well-established standards for determining whether a particular duty applies necessitates a finding that Dr. Mortimer did not owe Fowler or Rowlette a duty in negligence. The Idaho Supreme Court has "made clear that not every person or entity owes a tort duty to everyone else in all circumstances." *Boot v. Winters*, 145 Idaho 389, 393-94, 179 P.3d 352, 356-57 (Ct. App.2008).  In the instant action, neither Fowler nor Rowlette have stated a claim establishing that Dr. Mortimer owed them any type of duty.

### *I.* *Fowler was not Dr. Mortimer's Patient.*

A physician-patient relationship is established when a physician uses their specialized training to diagnose or treat an individual's medical condition. *Pines v. Idaho State Bd. of Medicine*, 158 Idaho 745, 754-55, 351 P.3d 1203, 1211-12 (2015). However, even when a physician-patient relationship exists, there still must be an inquiry into the scope of the duty owed by the physician to their patient. *Wilson v. Athens-Limestone Hosp.*, 894 S.E.2d 630, 633 (Ala. 2004). The scope of the duty owed by a physician is defined by the nature and circumstances of the patient's treatment. *Gilbert v. Miodovnik,* 990 A.2d 983, 993 (D.C. Ct. App. 2010) (whether a physician owes their patient a duty of care depends on the totality of circumstances.)

For example, in *Wilson* the patient received allegedly negligent treatment during a visit to the emergency room. *Wilson*, 894 So.2d at 632. The patient's regular physician, with whom the patient had a pre-existing physician-patient relationship, visited the emergency room to discuss the patient's diagnoses with the emergency room physicians. *Id*. Later, when the patient brought a malpractice action for injuries suffered during his emergency room visit, he asserted the claim against his regular physician. *Id*. The court dismissed his claim, however, finding that the plaintiff's regular physician did not owe him a duty during his emergency room visit. *Id*. The court reasoned that since the physician did not treat or diagnose his patient at the emergency room, but only discussed the conclusions of the emergency room physicians, the patient's regular physician did not owe a duty of care for any of his patient's injuries while under the care of the emergency room physicians. *Id*.

In the present case, Fowler alleges that Dr. Mortimer "diagnosed" him with a low sperm count and low sperm motility.[10] The claim against Dr. Mortimer is not, however, that he misdiagnosed Fowler's condition, that he did not properly treat Fowler's condition, or that Dr. Mortimer harmed Fowler in some way due to a missed diagnosis or a failure to properly treat his sperm condition. Fowler did not seek Dr. Mortimer's care, he did not ask Dr. Mortimer to treat his condition, nor did he accept treatment for his sperm condition from Dr. Mortimer. Like the factual scenario in *Wilson*, the physician-patient relationship has its limitations.

Plaintiffs' negligence claim does not stem from Dr. Mortimer's diagnosis of Fowler's low sperm count, but from the alleged negligent performance of Ashby's artificial insemination

---

[10] Complaint (Dkt. 1),, ¶ 11.

procedure. Since the procedure was performed only on Ashby, and further, was a procedure Fowler was biomechanically excluded from receiving, Dr. Mortimer only owed a duty to Ashby for its successful completion.

Nor can Fowler claim to have been Dr. Mortimer's patient simply based on his donation of genetic material. First, Fowler's donation is neither a diagnosis or treatment for his low sperm count. Second, having the donation of genetic material create a physician-patient relationship would significantly expand the duties of physicians involved in the artificial insemination process, leading to both absurd and unintended consequences.

In sum, since Fowler was not Dr. Mortimer's patient for purposes of Ashby's artificial insemination, Dr. Mortimer did not owe Fowler a duty for its proper performance.

Even if the Court determines that Fowler was not required to establish a physician-patient with Dr. Mortimer, Fowler cannot establish Dr. Mortimer owed him a duty because the Idaho Supreme Court has *never* found that a defendant owes a duty to the spouse of the individual to whom their conduct is directed.

In evaluating whether a duty exists in a particular context, Idaho courts use the "balancing of harm" analysis. *Beers v. Corporation of Pres. of Church of Jesus Christ of Latter-Day Saints*, 155 Idaho 680, 316 P.3d 92, 97 (2013). This analysis is directed by several factors, known as the *Rife* factors, which are:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Zaleha v. Roshold, Robertson & Tucker, Chtd.*, 131 Idaho 254, 953 P.2d 1363 (1997) *citing Rife v. Long*, 127 Idaho 841, 846, 908 P.2d 143, 148 (1995).

In *Zahela*, the court applied the balancing of harm analysis to claims brought by a spouse when her husband's employer discharged him, allegedly for discriminatory reasons. *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 131 Idaho 254, 953 P.2d 1363, 1364 (1998). The spouse brought claims of intentional and negligent emotional distress, alleging the employer's conduct caused her to suffer emotional distress, and that she was a foreseeable victim of their actions. *Id.* at 26, 953 P.2d at 1365. However, when the court applied the balancing of harm analysis, it determined the

employer did not owe a duty to the spouse. *Id*. The court reasoned that the employer's conduct was only directed to the husband, and the spouse only suffered emotional injuries, therefore the nexus between the complained of conduct and the injury was too tenuous to impose a duty. *Id*. Moreover, the court noted it had never imposed a duty on a defendant to not injure a person from conduct directed toward that person's spouse. *Id*.

In the present case, Fowler claims Dr. Mortimer owed him a duty to act by a prescribed standard of care, and that Dr. Mortimer violated that duty when Dr. Mortimer inseminated Ashby with his own genetic material. However, like the spouse in *Zaleha*, Fowler only complains of emotional injury arising from conduct directed toward his then wife, Ashby. Applying the court's reasoning in *Zaleha*, Fowler complaining of emotional injuries caused from conduct directed at his wife is too tenuous a connection between the act and injury to impose a duty on Dr. Mortimer. Since Fowler cannot establish even a prima facie claim that Dr. Mortimer owed him a duty of care, Fowler has failed to properly state a claim of medical negligence against Dr. Mortimer, and therefore his claim should be dismissed as a matter of law.

This conclusion is solidified by the appellate court's holding in *Zaleha* stating that they have *never* imposed a duty on a defendant to not injure the spouse of the person the conduct was directed toward. Additionally, other jurisdictions which have examined a husband's standing to sue in wrongful conception cases have held that a husband's claims are limited to a loss of consortium – a claim that is not at issue in this case. *See Jackson v. Bumgardner*, 347 S.E.2d 743, 749 (N.C. 1986). Ultimately, Fowler has failed to present any facts or reasoning that would compel an expansion of long-established limitations of the duties owed to third parties.  Therefore, his claims should be dismissed.

### ii.      *Rowlette was not Dr. Mortimer's Patient*.

Like Fowler, Rowlette claims Dr. Mortimer owed her a duty of care, and that Dr. Mortimer violated that duty when he artificially inseminated Ashby with his own genetic material. Unlike Fowler, Rowlette does not claim injuries stemming from conduct directed to a spouse, but rather claims her own birth as her injury. Since Rowlette complains that Dr. Mortimer's alleged negligence caused her life, Rowlette's claim can only be classified as one for wrongful life.

Wrongful life is a cause of action where a child alleges the defendant's negligence resulted in the person's birth. *Blake v. Cruz*, 108 Idaho 253, 259, 698 P.2d 315, 321 (1984) *superseded by*

statute.[11] Almost all jurisdictions, including Idaho, have refused to recognize wrongful life claims. Idaho Code § 5-334; *Id*. Idaho Code § 5-334(1) expressly prohibits wrongful life claims, stating:   A cause of action shall not arise, and damages shall not be awarded, on behalf of any person, based on the claim that but for the act or omission of another, a person would not have been permitted to have been born alive but would have been aborted. *See also Vanvooren v. Astin*, 141 Idaho 440, 442, 111 P.3d 125, 127 (2005).

The rational for the near universal rejection of wrongful life claims is they amount to a disclaimer of human life, implying the child's life itself is wrongful. *Id*. The denial of such claims ensures the dignity of human life. *Id*.

Here, Rowlette's claim that Dr. Mortimer negligently caused her life is a clear attempt to establish a wrongful life claim, a claim expressly rejected in Idaho by the plain language of Idaho Code § 5-334(1). Consequently, Rowlette has failed to state a claim for relief upon which relief may granted; therefore, her claims should be dismissed.

**b.**     **Fowler And Rowlette Are Not Real Parties In Interest.**

A real party in interest is the person who will be entitled to the benefits of the action if successful, one who is actually and substantially interested in the subject matter. *St. Luke's Reg'l Med. Ctr. v. Board of Comm'rs of Ada County*, 146 Idaho 753, 757, 203 P.3d 683, 687 (2009).  Fowler and Rowlette are not the real parties in interest on any of the causes of action since Ashby was the individual who allegedly suffered the original injury, i.e. the medical negligence.  Thus, Fowler and Rowlette are not entitled to the benefits of the action and have no actual interest in the subject matter.

As discussed above, Dr. Mortimer did not owe a duty to either Fowler or Rowlette.  Assuming *arguendo* that the remaining causes of action are not dismissed on other grounds, neither Fowler or Rowlette can be considered a real party in interest, especially when considering that the alleged original injury was to Ashby.  Plaintiffs' allegations of lack of informed consent, fraud, battery, breach of contract, and consumer protection do not include Rowlette.  Thus, Rowlette cannot be considered a real party in interest with regard to those claims and those claims should be dismissed

---

[11] The court in *Blake* found determined parents whose child had birth defects had a cause of action known as wrongful birth. *Blake* 108 Idaho at 257, 698 P.2d at 319. The portion of Blake authorizing a wrongful birth claim for parents of children born with preventable birth defects was overturned by I.C. § 5-334. I.C. § 5-334 also prevents wrongful life claims.

as to Rowlette.  And, even though Rowlette is mentioned in Plaintiffs' medical negligence cause of action, since she was not alive at the time of the care, she cannot be considered a real party in interest and that claim, too, should be dismissed as to Rowlette.   Additionally, since Plaintiffs' emotional distress claims are related to the alleged original injury to Ashby, Rowlette cannot be a real party in interest and those claims should be dismissed, as well.

Since Plaintiffs' causes of action all relate to the alleged original injury to Ashby – not an injury to Fowler, Fowler is not a real party in interest and all claims as to Fowler should be dismissed.

### CONCLUSION

In sum, Plaintiffs' claims should be dismissed as follows:

1) Medical negligence:  barred by the statute of limitation, no duty owed to Fowler and Rowlette,

2) Lack of informed consent:  barred by the statute of limitation and for failure to state a claim;

3) Fraud:  precluded by malpractice claim;

4) Battery:  barred by the statute of limitation, precluded by malpractice claim;

5) Emotional distress:  barred by the statute of limitation, precluded by malpractice claim, and failure to state a claim;

6) Breach of contract:  barred by the statute of limitation, precluded by malpractice claim;

7) Consumer protection violation:  barred by the statute of limitation, precluded by malpractice claim;

8) Failure to state claim as to Ms. Mortimer; and

9) Fowler and Rowlette lack standing and are not real parties in interest.

DATED this ____ day of June, 2018.

POWERS TOLMAN FARLEY, PLLC

By_____
   Raymond D. Powers - Of the Firm
   Portia L. Rauer - Of the Firm
   *Attorneys for Defendants Gerald E. Mortimer,*
   *M.D. and Linda G. McKinnon Mortimer*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___13___ day of June, 2018, I caused to be served a true copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S MOTION TO DISMISS**, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jillian A. Harlington, jharlington@walkerheye.com
Matthew M. Purcell, mp@purcellfamilylaw.com
Shea C. Meehan, smeehan@walkerheye.com
*Attorneys for Plaintiffs*

J. Michael Wheiler, wheiler@thwlaw.com
Richard R. Friess, friess@thwlaw.com
*Attorneys for OB-GYN Associates*

_____
Raymond D. Powers
Portia L. Rauer