1   Shea C. Meehan, ISB #6407                          Matt Purcell, Pro Hac Vice
    Jillian Harlington, Pro Hac Vice                   Purcell Law, PLLC
2   Walker Heye Meehan & Eisinger, PLLC         2001 N. Columbia Center Blvd
    1333 Columbia Park Trail, Ste 220                  Richland, WA 99352
3   Richland, WA 99352                          Telephone: (509) 783-7885
    Telephone: (509) 735-4444                          Fax: (509) 735-7886
4   Fax: (509) 735-7140                          mp@purcellfamilylaw.com
    smeehan@walkerheye.com                         Attorney for Plaintiffs
5   jharlington@walkerheye.com
6   Attorneys for Plaintiffs

7

8

9                   IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF IDAHO

11  KELLI ROWLETTE, an individual, SALLY
    ASHBY, an individual, and HOWARD
12  FOWLER, an individual,                  Cause No.  4:18-cv-143-DCN

13                          Plaintiffs,

    v.
14
                                           MEMORANDUM IN OPPOSITION TO
    GERALD E. MORTIMER, M.D., LINDA G.     DEFENDANTS' MOTIONS TO DISMISS
15  McKINNON MORTIMER, and the marital     (ECF 16, 17)
    community comprised thereof, and
16  OBSTETRICS AND GYNECOLOGY
    ASSOCIATES OF IDAHO FALLS, P.A., an
17  Idaho professional corporation,

18                          Defendants.

19

20          COME NOW, the Plaintiffs, by and through their counsel of record, and submit the

21  following Memorandum in Opposition to Defendants Gerald E. Mortimer And Linda G.

22  Mckinnon Mortimer's Motion to Dismiss (ECF 16), and Defendant Obstetrics and Gynecology

23  Associates, P.A., Motion to Dismiss (ECF 17).

24

25

MEMORANDUM IN OPPOSITION OF              1333 Columbia Park Trail, Suite 220
DEFENDANTS' MOTIONS TO DISMISS - 1              Richland, WA 99352
                                                 P (509) 735-4444
                                                 F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

## I.    LEGAL ANALYSIS

### A.    Legal Standard on Motion to Dismiss.

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

A dismissal without leave to amend "is improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "[I]n dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### B.    Plaintiff's Claims are Not Barred by the Statute of Limitations.

**1.    Dr. Mortimer's argument that he did not engage in fraudulent concealment because Ms. Ashby consented to an anonymous donor ignores the bilateral nature of the anonymity agreed to.**

Dr. Mortimer firsts asks this Court to step into the shoes of a physician and summarily determine that when a patient consents to an anonymous donor, that gives a physician carte blanche authority to (1) impregnate his own patient without the patient's knowledge or consent

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 2

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1  and (2) to conceal the matter from the patient to take advantage of the statute of limitations.  This

2  contention is offensive, absurd, and asks the Court to reach an ethically dubious conclusion.  At

3  the very least, evaluation of this question is inappropriate without considering expert medical

4  testimony on the issue of the relevant standard of care (i.e. duty).

5      In professional malpractice claims, the issues of duty, breach, and proximate cause must

6  all be established by expert testimony.  I.C. §§ 6-1012, 6-1013; *Sheridan v. St. Luke's Regional*

7  *Medical Center*, 135 Idaho 775, 785, 25 P.3d 88 (2001).  Plaintiffs allege Dr. Mortimer had a

8  professional duty not to impregnate Ms. Ashby using his own sperm and that he breached that

9  duty by doing just that—to wit, secretly impregnating Ms. Ashby with his own sperm—despite

10 Ms. Ashby's understanding that the sperm would be that of an anonymous, college student

11 donor.  (ECF 1 ¶¶ 26-28).    In their motion, Defendants assert the contrary, and announce

12 without support that a physician has no duty to inform his patient if he plans on impregnating her

13 with his own sperm.  (ECF 16, pp. 3-4).  In order to accept Dr. Mortimer's argument, this court

14 would have to rely on information outside the Complaint—specifically, expert testimony as to

15 the standard of care—rendering the question inappropriate to decide on a motion to dismiss

16 because it goes beyond the pleadings.

17      Further, Dr. Mortimer's deeply concerning logic relies entirely on the fact that the donor

18 was meant to be anonymous.  It conveniently avoids the allegation that he did not fit the

19 parameters of the acceptable donor. (ECF 1 ¶ 16).  It also ignores the fact that anonymity is a

20 two-way street.  Ms. Ashby and Mr. Fowler consented to the use of sperm from a donor who

21 would be anonymous to them, and in turn, that donor would not know who they were, and would

22 not know Kelli was his biological daughter.  This anonymity was taken from them when Dr.

23 Mortimer decided to father Kelli on his own and watched her grow up knowing she was his

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 3

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

daughter, all along keeping this secret to himself.  Dr. Mortimer's argument essentially amounts to a disturbing belief that once a patient assents to an anonymous donor, a physician has free reign to impregnate her using his own sperm.  This suggestion is repugnant to the values of a moral and civilized society.

> **2.    Plaintiffs' claims did not accrue until Plaintiffs' discovered Dr. Mortimer was likely Kelli Rowlette's biological father.**

The Supreme Court of Idaho has held that a cause of action for professional negligence cannot accrue until some damage has occurred. *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984).  The reason for the "some damage" rule is that "in order to recover under a theory of negligence, the plaintiff must prove actual damage." *Id.*  "Until some damage occurs, a cause of action for professional malpractice does not accrue. Therefore, some damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues." *Lapham v. Stewart*, 137 Idaho 582, 586, 51 P.3d 396, 400 (2002) (citations omitted).

In the matter before the Court, plaintiffs have alleged that damage did not occur for Mr. Fowler and Ms. Ashby until they learned of Dr. Mortimer's violation of their trust.  (ECF 1 ¶¶ 22-25).  Similarly, Ms. Rowlette was not damaged until she discovered she was the product of a sexual assault perpetrated upon her mother. *Id.*  Thus, the damage to these Plaintiffs occurred, at the earliest, in July 2017, well before the expiration of the two-year statute of limitations.

Further, Dr. Mortimer's argument that plaintiffs failed to take reasonable care to investigate whether they had been damaged is preposterous.  Until Ms. Rowlette unilaterally pursued DNA testing for the purpose of genealogical research, the plaintiffs had no reason to believe Dr. Mortimer would have defrauded them by secretly causing Ms. Ashby to bear his child.  Until the present case was revealed by the filing of this lawsuit, there was no public

MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTIONS TO DISMISS - 4

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

awareness that the defendants had been engaging in this behavior, and thus no information that Ms. Ashby and Mr. Fowler could have come into contact with that would have roused their suspicions and triggered a duty to investigate diligently.

Dr. Mortimer strategically chose his victims and benefitted from the purportedly anonymous nature of the procedure.  Because of this, any lack of physical resemblance between Ms. Rowlette and Mr. Fowler could be reasonably understood by Mr. Fowler and Ms. Ashby to be the result of the anonymous donor's biological influence.  Ms. Rowlette had always understood Mr. Fowler to be her biological father, and could not have imagined the situation she now finds herself in.  Ms. Rowlette had no contact with Dr. Mortimer and had no reason to know of his existence.  The plaintiffs were not on notice that Dr. Mortimer may have violated their trust until Mr. Fowler and Ms. Ashby learned of the DNA match and Ms. Rowlette learned Dr. Mortimer's relationship to her parents.  Plaintiffs have presented sufficient facts in their complaint to show that the damage did not occur until the summer of 2017, less than a year before the complaint was filed on March 30, 2018.  (ECF 1 ¶ 21).

Dr. Mortimer's argument amounts to a suggestion that any couple that has used sperm from an anonymous donor to achieve conception has a duty to discover the identity of the anonymous donor because it is somehow foreseeable that their doctors might be impregnating them instead.  The defendants cannot meet their burden on their motions to dismiss on the basis of the statute of limitations.

### 3. Tolling for fraudulent concealment applies to all of Plaintiffs' personal injury claims.

Dr. Mortimer next claims that several of plaintiffs' claims are not tolled for fraudulent concealment under Idaho law.  Dr. Mortimer's distorted reading of the tolling rule contained in

MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTIONS TO DISMISS - 5

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER HEYE MEEHAN EISINGER

1   Idaho Code § 5-219(4) misstates the law.  The statute of limitations reads in pertinent part as

2   follows:

> 4.      An action to recover damages for professional malpractice, <u>or for an injury to the person</u>,… <u>caused by the wrongful act or neglect of another,</u> including any such action arising from breach of an implied warranty or implied covenant; provided, however … when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer <u>standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party,</u> the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of[.] … [a]n action within the foregoing … fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein <u>refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho.</u>

13   I.C. § 5-219(4).

14      The statute, by its plain language, incorporates not just negligence, but also wrongful acts

15   and breaches that result in injury when the tortfeasor is licensed to perform such services by the

16   State of Idaho.  *Id.*  It is the relationship of the tortious party to the harmed party that dictates

17   whether the tolling rule applies, not whether the act complained of is specifically tied to a breach

18   of the medical standard of care.  *Id.*  In short, the analysis turns on the relationship of the parties

19   at the time of the act, not whether the act qualifies as a professional breach. This logic

20   acknowledges that professionals such as physicians have a unique and heightened duty of candor

21   towards their patients.  Dr. Mortimer offers a strained, piece-meal argument to absolve himself

22   of liability for impregnating his own patient with his own sperm and without her consent.

23

24      Dr. Mortimer relies heavily on *Glaze v. Deffenbaugh* for the proposition that I.C. § 5-

25   219(4) only applies to instances of medical negligence.  Importantly, *Glaze* does not discuss the

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 6

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

application of the tolling provision in the medical setting and has no applicability to the present matter.  144 Idaho 829, 831, 172 P.3d 1104 (2007).  The plaintiffs in *Glaze* sued their father under theories of battery and assault for sexually molesting them as children.  *Id.*  In affirming the trial court's decision to dismiss their claims on summary judgment, the Idaho Supreme Court highlighted that it is the relationship between the parties that informs application of the tolling provisions.  *Id.* at 832.  Specific to the facts in *Glaze*, the court noted that the parent-child relationship did not fall under the tolling provisions of I.C. § 5-219(4):

> Counsel for the daughters argued that they are entitled to the fraudulent concealment exception in I.C. § 5–219(4) because the parties were in a parent-child relationship and because Deffenbaugh concealed his alleged molestation of each daughter from the other. It is asserted that the concealment ended only in 2003 when each daughter learned that the other had been molested and Deffenbaugh purportedly admitted to the molestation. This contention is without merit. I.C. § 5–219(4) applies to professional malpractice claims, not claims of the nature alleged in this case.

*Id.*  The holding of the *Glaze* court clearly hinged on the relationship of the parties, and the general reference to professional malpractice is merely dicta, not crafted thoughtfully by the court for application to the present case.  Clearly the tolling provisions of Idaho Code § 5-219(4) apply to all of Plaintiffs' claims for personal injury.

### a)   *Tolling for fraudulent concealment applies to Dr. Mortimer's breach of his duty to obtain informed consent.*

Dr. Mortimer argues that because the tort of failure to obtain informed consent is a separate cause of action from medical negligence, the tolling provision cannot apply.  This reading of the statute is strained and would lead to an absurd result.

Failure to obtain informed consent is a separate cause of action from medical negligence. *Foster v. Traul*, 141 Idaho 890, 894, 120 P.3d 278 (2005).  At the time of Dr. Mortimer's acts, Idaho courts had acknowledged a physicians' duty to disclose the material aspects of a course of

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 7

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

treatment to the patient to enable the patient to make an informed decision regarding treatment. *See LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980) (superseded by statute). Notably, Dr. Mortimer never denies impregnating Ms. Ashby with his own sperm and never alleges that he informed Ms. Ashby and Mr. Fowler of his intentions to use his own sperm.

The tolling provision plainly applies in the instant matter because Dr. Mortimer had a professional relationship with Ashby and Fowler as their physician, and Dr. Mortimer breached his duty to inform his patients of material aspects of the course of treatment—that he would take the opportunity to impregnate Ms. Ashby himself, rather than obtaining sperm from an anonymous donor with particular characteristics, as they had requested and authorized.

### b) Tolling for fraudulent concealment applies to the tortious injuries Dr. Mortimer perpetuated against the Plaintiffs.

Plaintiffs' claims for intentional and negligent infliction of emotional distress are tolled by I.C. § 5-219(4)'s fraudulent concealment provision.  Plaintiffs have alleged that:

> [I]nstead of using donor genetic material and Mr. Fowler's genetic material as promised, Dr. Mortimer inseminated Ms. Ashby with his own genetic material. Dr. Mortimer falsely represented that he had used donor genetic material and Mr. Fowler's genetic material, and intentionally concealed this fact from Ms. Ashby and Mr. Fowler. Dr. Mortimer did not match the donor specifications Ms. Ashby and Mr. Fowler agreed to.

(ECF 1 ¶ 16). Plaintiffs further alleged that "Dr. Mortimer fraudulently and knowingly concealed his use of his own genetic material in the Procedure."   (ECF 1 ¶ 20).  These allegations must be taken at face value on a motion to dismiss.  The question before this Court is whether the facts alleged in the complaint give rise to a reasonable inference of fraudulent and intentional concealment.  Since the answer to the query is "yes," Plaintiffs' claims cannot be dismissed on statute of limitations grounds.

The tolling provision of I.C. § 5-219(4) applies to tortious injury occurring as a result of wrongful actions or neglect by a professional, as opposed to a lay person.  I.C. § 5-219(4) ("An

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

action to recover damages for … an injury to the person, … caused by the wrongful act or neglect of another …").  Rather than limiting the tolling provision to negligent acts alone, the Legislature specifically provided tolling relief for other types of wrongful actions committed in the context of a professional relationship. Indeed, it would be absurd if injured party did not receive the benefit of tolling for willful and intentional acts in the same manner as if the conduct against them were merely negligent.  Clearly, Plaintiffs' personal injury claims are tolled by Dr. Mortimer's fraudulent concealment that he used his own sperm to impregnate Ms. Ashby.

The Plaintiffs have alleged that they agreed to the use of sperm from a donor matching characteristics Dr. Mortimer did not fit at the time of the procedure.  (ECF 1 ¶ 16).  Plaintiffs have also alleged that Dr. Mortimer knew Ms. Rowlette was his daughter and cried when the family informed him they would be moving to Washington State.  (ECF 1 ¶ 20).  This Court has sufficient facts before it to conclude that Dr. Mortimer knowingly and fraudulently concealed what he had done to this family.  The defendants' motions to dismiss must be denied.

### c)   *Plaintiffs were all patients of Dr. Mortimer and OGA.*

It is undisputed that Ms. Ashby was the defendants' patient.  Defendants want to argue, however, that Mr. Fowler and Ms. Rowlette were never patients, and thus have no standing in this lawsuit.  This contention is baseless, and defendants' motions to dismiss based on this argument must be denied. A physician-patient relationship is established when a physician uses their specialized training to diagnose or treat an individual's medical condition.  *Pines v. Idaho State Bd. Of Medicine*, 158 Idaho 745, 754-55, 351 P.3d 1203 (2015).

Plaintiffs have alleged in their complaint that both Mr. Fowler and Ms. Rowlette were patients of Dr. Mortimer and OGA.  (ECF 1 ¶¶ 10, 27).  Plaintiffs have alleged that Dr. Mortimer diagnosed Mr. Fowler with low sperm count and low motility.  (ECF 1 ¶ 11).  Plaintiffs have also alleged that when she was born, Ms. Rowlette was delivered by Dr. Mortimer, and Dr.

MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTIONS TO DISMISS - 9

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

1   Mortimer signed her birth certificate, attesting as a medical professional to her live birth, another

2   medical diagnosis. (ECF 1 ¶¶ 19, 24).  On a motion to dismiss the Court is required to take the

3   plaintiffs' factual contentions in the complaint as true, and if those facts lead to a reasonable

4   inference supporting the claim alleged, the Court cannot dismiss the matter.  *Twombly*, 550 U.S.

5   at 570.  In light of the fact that Dr. Mortimer rendered a diagnosis and a course of treatment for

6   Howard Fowler, and delivered Kelli Rowlette, attesting to her live birth, this Court must

7   conclude that Plaintiffs have pled sufficient facts to survive the defendants' motion to dismiss on

8   the basis that Ms. Rowlette and Mr. Fowler were not patients of Dr. Mortimer and OGA.

9
10
   **4.      Even if Tolling for Fraudulent Concealment Isn't Applicable, Plaintiffs' Emotional Distress Claims Are Not Barred by the Statute of Limitations.**

11      Claims for emotional distress are properly considered continuing torts.  *Curtis v. Firth*,

12   123 Idaho 598, 604, 850 P.2d 749 (1993).  The statute of limitations on continuing torts does not

13   begin to run until the tortious act ceases.  *Id.*  Dr. Mortimer continued to conceal his battery and

14   his fraud and allowed this family to believe that Ms. Rowlette had been conceived either with the

15   use of Mr. Fowler's sperm, or the use of sperm from an anonymous donor.  (ECF 1 ¶ 20-21).

16      The Idaho Supreme Court has adopted the view that a continuing tort tolls the limitations

17   period:

18          It is well-settled that "[w]hen a tort involves continuing injury, the cause of action
19          accrues, and the limitation period begins to run, at the time the tortious conduct
            ceases." Since usually no single incident in a continuous chain of tortious activity
20          can "fairly or realistically be identified as the cause of significant harm," it seems
            proper to regard the cumulative effect of the conduct as actionable. Moreover,
21          since "one should not be allowed to acquire a right to continue the tortious
            conduct," it follows logically that statutes of limitation should not run prior to its
22          cessation.

23   *Curtis v. Firth*, 123 Idaho 598, 603, 850 P.2d 749 (1993) (quoting with approval from *Page v.*

24   *United States*, 729 F.2d 818, 821–22 (D.C.Cir.1984)). The Court then held that because the

25   abuse suffered by the plaintiff was a continuing one, the limitation period did not begin to run

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 10

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1  until the tortious behavior had ended. A continuing tort was defined as "one inflicted over a

2  period of time; it involves a wrongful conduct that is repeated until desisted, and each day

3  creates a separate cause of action." *Id.* Only when such tortious conduct ends does the limitations

4  period begin to run. *Id.*

5       Defendants suggest that Dr. Mortimer's misconduct ceased in the summer of 1980, and

6  thus imply that the fraud he perpetuated on this family was not of a continuing nature.

7  Defendants will likely rely on *Glaze v. Deffenbaugh* to support their position.  In *Glaze*, The

8  Idaho Supreme Court rejected the contention that a father's molestation of his daughters was a

9  continuing tort.  144 Idaho at 833.  *Glaze* is clearly distinguishable from the present case.  In

10  *Glaze* the court based its conclusion on the fact that the father's molestation had ceased in 1979.

11  *Id.*  From 1979 to the time the case was filed, the daughters knew the wrong which had been

12  committed against them by their father and no further acts took place.  *Id.*  In contrast, Dr.

13  Mortimer has continued each day for several decades his deception regarding impregnating his

14  patient with his own sperm.  This continued deception constitutes a continuing tort.

15      **5.  Equitable Estoppel Prohibits Dr. Mortimer and OGA From Benefitting from A Statute of Limitations Defense Based on Their Concealment of Material Facts.**

16

17       All of plaintiffs' claims should survive the defendants' motions to dismiss on grounds of

18  the statute of limitations under the principles of equitable estoppel.  Idaho Courts have long

19  recognized that a party can be estopped from pleading a statute of limitations defense when the

20  defendant's own actions prevented the discovery of the harm in time to bring a claim within the

21  time permitted by statute.  *See Twin Falls Clinic & Hospital Building Corp. v. Hamill*, 103 Idaho

22  19, 644 P.2d 341 (1982); *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 607 P.2d 1055 (1980);

23  *Idaho Title Co. v. American States Ins. Co.*, 96 Idaho 465, 531 P.2d 227 (1975); *Bjornstad v.*

24  *Perry*, 92 Idaho 402, 443 P.2d 999 (1968).   In this case, equitable estoppel prevents Dr.

25  Mortimer from benefitting from the fraud he perpetrated upon this family.

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 11

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

1   "Equitable estoppel is available to a plaintiff when the defendants, by their

2   representations or conduct, kept the plaintiff from pursuing a cause of action during the

3   limitation period." *Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221 (1996). As a general

4   rule, a defendant will be estopped from asserting a statute-of-limitations defense when its own

5   prior representations or conduct have caused the plaintiff to run afoul of the statute and it is

6   equitable to hold the defendant responsible for that result. See *Borzeka v. Heckler*, 739 F.2d 444,

7   448 n. 3 (9th Cir. 1984); *Travelers Express Co. v. Cory*, 664 F.2d 763 (9th Cir. 1981).

8       Equitable estoppel prevents assertion of a statute of limitations under circumstances that

9   would be wholly inequitable. In *Twin Falls Clinic & Hospital Bldg. Corp. v. Hamill*, 103 Idaho

10  19, 644 P.2d 341 (1982), the Supreme Court of Idaho considered whether a plaintiff may invoke

11  the doctrine of equitable estoppel in a professional malpractice action in order to prevent the

12  defendant from asserting the statute of limitations set forth in Idaho Code § 5-219. The action

13  alleged that the defendant architect fraudulently concealed the cause of an injury. The defendant

14  argued that by enacting Idaho Code § 5-219 the Idaho legislature precluded the use of the

15  doctrine of equitable estoppel as a bar to a statute-of-limitations defense, at least in professional

16  malpractice cases. The Idaho Supreme Court determined that the legislature did not intend to

17  limit the right of plaintiffs to invoke the doctrine of equitable estoppel by enacting section 5-219:

18
19          We find no intent, either explicit or implicit, in the language of I.C. § 5-219 to
            eliminate the doctrine of equitable estoppel in professional malpractice actions.
20          Estoppel is a long-accepted portion of Anglo-American jurisprudence. In one of
            this Court's early decisions, *Fremont County v. Warner*, 7 Idaho 367, 370, 63 P.
21          106, 107 (1900), it was stated that estoppel as a principle is "so well established ...
            that it needs no citation of authority to support it." Since estoppel is found in the
22          common law, statutory changes therein are not presumed but must be shown by a
            clear intent to alter or oppose the common law or repeal it by necessary
23          implication.
24
25  *Id.* 103 Idaho at 21-22 (citations omitted).

        To be entitled to equitable estoppel, the plaintiff must show:

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 12

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1
2
3
4

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon, and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his [or her] prejudice.

5
*Twin Falls Clinic & Hosp. Bldg.*, 103 Idaho at 22.

6
7
8
9
10
11

This case is a prime example of why the courts have adopted the principals of equitable estoppel to secure justice for aggrieved parties.  At the time Dr. Mortimer impregnated Ms. Ashby, he believed he could do so with perpetual anonymity as the medical profession did not know what would one day be possible with genetic testing.  Dr. Mortimer used this to his benefit and thought his secret would be lost to time.  Fortunately, the law does not allow individuals such as Dr. Mortimer to benefit from their calculated dishonesty.

12
13

> ***a)    Dr. Mortimer knowingly falsely represented the material fact that he inseminated Ms. Ashby with his own sperm.***

14
15
16
17
18
19
20
21
22
23
24

Dr. Mortimer, individually as a physician and as a representative, employee, and principal of OGA, falsely represented to Ms. Ashby and Mr. Fowler that the sperm used in the insemination procedure which resulted in Ms. Rowlette's conception, was sperm from an anonymous donor that attended college, had brown hair, blue eyes, and was over 6 feet tall. (ECF 1 ¶¶ 4, 6, 10, 12-14).  Dr. Mortimer instead impregnated his patient with his own sperm, despite not fitting these characteristics and despite the fact that Ms. Ashby and Mr. Fowler were not anonymous to him.  (ECF 1 ¶ 16).  Dr. Mortimer knew he fathered Ms. Rowlette and cried when he learned the family would be leaving Idaho Falls.   (ECF 1 ¶ 20).   Plaintiffs have undeniably pleaded facts supporting an inference that Dr. Mortimer made a false representation of a material fact—the first element of equitable estoppel.

25

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 13

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

2

   b)     *Ms. Ashby and Mr. Fowler did not know and could not have discovered that Dr. Mortimer had fathered Ms. Rowlette.*

3

4

   Equitable estoppel does not eliminate, toll, or extend the statute of limitations. *J.R.*

*Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 887 P.2d 1039 (1994).  Instead, it bars a

5

party from asserting the statute of limitations as a defense.  *Id.*   That bar lasts only for a

6

reasonable time after the party asserting estoppel <u>discovers or reasonably could have discovered</u>

7

<u>the truth</u>. *Knudsen v. Agee*, 128 Idaho 776, 918 P.2d 1221 (1996); *Anderson v. Anderson,*

8

*Kaufman, Ringert and Clark, Chartered*, 116 Idaho 359, 775 P.2d 1201 (1989).  In Ms. Ashby

9

and Mr. Fowler's case, that time occurred in the summer of 2017.

10

   Ms. Ashby and Mr. Fowler did not know that Dr. Mortimer used his own sperm to

11

impregnate Ms. Ashby.  (ECF 1 ¶¶ 16-17).  In fact, because the nature of the sperm donation was

12

to be anonymous—both to the donor and to the recipients—reasonable minds can conclude that

13

14

Ms. Ashby and Mr. Fowler were led into a false sense of security and dissuaded from

investigating by the terms of the agreement with their doctor.  Under these circumstances, Mr.

15

16

Fowler and Ms. Ashby cannot be said to have acted unreasonably by not actively seeking to

discover Ms. Rowlette's paternity.

17

18

   Dr. Mortimer wants to point to the availability of paternity testing in 1996 to suggest that

19

the means were available, and the plaintiffs were therefore not diligent in discovering his secret.

20

Dr. Mortimer fails to acknowledge that in order to determine paternity, you must have a

21

suspicion as to the putative father, and access to their DNA.  Even if Ms. Ashby and Mr. Fowler

22

had discovered Mr. Fowler was not Ms. Rowlette's biological father, it would bring them no

23

closer to discovering that Dr. Mortimer had used his own sperm rather than that of a donor.  In

24

fact, such a finding would be unsurprising considering their knowledge of the donation process.

25

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 14

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1    Even if Ms. Ashby and Mr. Fowler had suspected Dr. Mortimer from the start, Dr.

2   Mortimer would have to assent to such a test, which is unlikely considering his current refusal to

3   do so.  Plaintiffs' have presented sufficient facts to lead a reasonable person to conclude they did

4   not know of Dr. Motimer's actions and could not have discovered them prior to the summer of

5   2017.  Thus, the second element of equitable estoppel is met.

6            c)      *Dr. Mortimer intended that Ms. Ashby and Mr. Fowler rely on*

7                    *his representation that the donor sperm was not his.*

8    Dr. Mortimer could have offered his sperm outright to couples seeking to conceive, but

9   he did not do so for at least two reasons: (1) it would violate the standard of care; and (2) he

10  intended that the patients he impregnated would never come to find out that he had secretly

11  fathered their children for obvious reasons.  Dr. Mortimer's current refusal to participate in

12  paternity testing proves this point. Dr. Mortimer knew at the time he impregnated Ms. Ashby that

13  he did not fit their required parameters and was not an anonymous donor, and that he would risk

14  losing his business, his medical license and his opportunity to impregnate her if he was honest.

15  The third element of equitable estoppel is easily met.

16           d)      *Mr. Fowler and Ms. Ashby relied on Dr. Mortimer's*

17                   *representations to their prejudice.*

18   Ms. Ashby and Mr. Fowler clearly relied on Dr. Mortimer's representations and agreed to

19  go through with the procedure.  (ECF 1 ¶ 16-17).  This reliance directly caused the damage they

20  now complain of, as well as the passage of time Dr. Mortimer now wishes to take advantage of

21  for his statute of limitations defense. This family's reliance on Dr. Mortimer's word for the last

22  several decades helped him conceal his wrongdoing in an attempt to escape liability.

23   This court should not allow Dr. Mortimer and OGA to avail themselves of a statute of

24

25  limitations defense and escape liability for the atrocious fraud that has been perpetuated against

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

Ms. Ashby and Mr. Fowler.  Equitable estoppel clearly applies in the present case, and the defendants' motion to dismiss based on the statute of limitations should be denied.

### C.      Plaintiffs Have Pled Sufficient Facts to Maintain A Claim for Lack of Informed Consent.

Defendants argue that there is no material risk in Dr. Mortimer's decision to care for and deliver his biological daughter, Ms. Rowlette.  This argument attempts to misdirect the Court by failing to acknowledge the full requirements of informed consent in Idaho.

At the time of Dr. Mortimer's acts, Idaho courts had acknowledged a physicians' duty to disclose the material aspects of a course of treatment to the patient to enable the patient to make an informed decision regarding treatment.  *See LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980) (superseded by statute) (adopting *Riedinger v. Colburn*, 361 F. Supp. 1073, 1076 (D. Idaho 1973).  The *Riedinger* Court acknowledged a physicians' duty to disclose the risks of a given procedure, characterizing this as a "minimal disclosure" and adding that "a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances."  Plaintiffs' allege that an OB/GYN in good standing practicing in Idaho Falls, Idaho in 1980 would disclose his intention to impregnate his patient before endeavoring to do so.

In the absence of an emergency, a healthcare provider must offer pertinent information to his or her patients, and the failure to do so is a grave affront to their rights to self-determination and bodily autonomy.  *See Pekera v. Purpora*, 80 Conn. App. 685, 836 A.2d 1253, 1256 (2003), aff'd, 273 Conn. 348, 869 A.2d 1210 (2005); *McQuitty v. Spangler*, 410 Md. 1, 976 A.2d 1020, 1031 (2009); *Canesi ex rel. Canesi v. Wilson*, 158 N.J. 490, 730 A.2d 805, 812 (1999); Roger L. Jansson, Note, *Researcher Liability for Negligence in Human Subject Research: Informed Consent and Researcher Malpractice Actions*, 78 Wash. L. Rev. 229, 244 (2003).

The Court has sufficient information in the Plaintiffs' complaint to find a plausible argument exists for the breach of Dr. Mortimer's duty to obtain informed consent.  To the extent

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 16

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1   the Court requires additional specificity, Plaintiffs request leave of court to amend their

2   complaint accordingly.

3         **D.**      **Plaintiffs' Claims Are Not Subject to the Gravamen Analysis.**

4         Plaintiffs agree that other causes of action are generally prohibited where the damage a

5   plaintiff complains of primarily sounds in medical malpractice.  *Hoover v. Hunter*, 150 Idaho

6   658, 663, 249 P.3d 851, 856 (2011).  Consequently, Ms. Ashby wishes to clarify that, provided

7   her medical malpractice claim is not dismissed, she will only pursue Dr. Mortimer and OGA for

8   the claims of medical malpractice and failure to obtain informed consent.  Thus, the gravamen

9   analysis as to Ms. Ashby is an unnecessary exercise.

10        Further, Mr. Fowler and Ms. Rowlette will clarify that they are not pursuing claims under

11  theories of medical malpractice or failure to obtain informed consent as to their own medical

12  treatment, only because their damage does not arise from Dr. Mortimer's negligence in their

13  care.  Nevertheless, Ms. Rowlette and Mr. Fowler have remaining claims they are entitled to

14  pursue against Dr. Mortimer and OGA that do not arise directly from the provision of medical

15  care as to them.

16

17        It does not follow, however, that Defendants owed no separate common law, statutory, or

18  contractual duty to Ms. Rowlette and Mr. Fowler.  Idaho courts have not addressed the context

19  where a physician impregnates his own patient without her consent or the consent of her

20  husband, causing damage to both spouses and the resultant child.  However, logic dictates that

21  where a physician otherwise injures a patient outside the context of providing medical care to

22  such person, that physician cannot rely on a gravamen analysis to avoid culpability for wrongful

23  actions.  For instance, had the subject of this suit been an auto accident between Dr. Mortimer

24  and the Plaintiffs, Dr. Mortimer would not be able to avoid liability by virtue of his physician-

25  patient relationship to the persons in the vehicle.  Nor can Dr. Mortimer now avoid liability for

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 17

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

his actions harming Mr. Fowler and Ms. Rowlette because he happened to be their physician at the time of the injury.  Indeed, Dr. Mortimer admits that the harm complained of had nothing to do with treating Mr. Fowler and Ms. Rowlette.

Defendants confusingly argue that Dr. Mortimer did not have a patient-physician relationship with Mr. Fowler and Ms. Rowlette, but then argue that they are precluded from bringing claims other than medical-malpractice based on a gravamen analysis.  Defendants cannot have it both ways.  Both Mr. Fowler and Ms. Rowlette were foreseeable plaintiffs at the time Dr. Mortimer decided to impregnate Ms. Ashby without her consent and in violation of the agreement he had with Ms. Ashby and Mr. Fowler.

While acting as their physician, Dr. Mortimer, and thus OGA, perpetuated wrongful acts against these plaintiffs that occurred outside of the scope of their medical care, but in the context of a physician-patient relationship.  Thus, a gravamen analysis as to Ms. Rowlette and Mr. Fowler is inapplicable.

### E.    Plaintiffs Have Pled Sufficient Facts to Maintain A Claim for Intentional Infliction of Emotional Distress.

In Idaho, a claim for intentional infliction of emotional distress requires a plaintiff to show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the conduct and the emotional distress, and (4) the emotional distress was severe. *See Nation v. State Dep't of Correction*, 144 Idaho 177, 192, 158 P.3d 953 (2007). "Unlike the tort of negligent infliction of emotional distress, intentional infliction of emotional distress does not require injury or a physical manifestation resulting from emotional turmoil." *Alderson v. Bonner*, 142 Idaho 733, 741, 132 P.3d 1261 (Id. Ct. App. 2006) (citing *Curtis v. Firth*, 123 Idaho 598, 601, 850 P.2d 749 (1992)). However, the plaintiff must show both outrageous conduct and severe emotional distress.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

ATTORNEYS

1   *Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 849, 606 P.2d 944 (1980) (overruled

2   on other grounds by *Brown v. Fritz*, 108 Idaho 357, 359–60, 699 P.2d 1371 (1985). The distress

3   must be so severe that "no reasonable man could be expected to endure it." *Davis v. Gage*, 106

4   Idaho 735, 741, 682 P.2d 1282 (Id. Ct. App. 1984) (citations omitted).

5       In Idaho, a claim for negligent infliction of emotional distress requires a showing of the

6   following elements: (1) a legally recognized duty, (2) a breach of that duty, (3) a causal

7   connection between the defendant's conduct and the breach, and (4) actual loss or damage.

8   *Johnson v. McPhee*, 147 Idaho 455, 466, 210 P.3d 563 (Idaho Ct. App. 2009) (*citing Brooks v.*

9   *Logan*, 903 P.2d 73, 78 (1995) (superseded by statute on other grounds)). Negligent infliction of

10  emotional distress also requires there to be some physical manifestation of the plaintiff's

11  emotional injury. *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613,

12  624 (2013); *Sommer v. Elmore Cnty.*, 903 F.Supp.2d 1067, 1075 (D. Idaho 2012).

13

14      Defendants contend that Plaintiffs have failed to clearly delineate their actual damages

15  and their physical manifestations of emotional distress.  To the contrary, Plaintiffs have alleged

16  that they were "devastated," that Mr. Fowler and Ms. Ashby "painfully labored over whether to

17  tell Mrs. Rowlette," that they "struggled to cope with their own anguish," that Ms. Rowlette was

18  "horrified," and that all of them have "been suffering immeasurably."  (ECF 1 ¶¶ 22-25).  These

19  are sufficient facts for the Court to find sufficient facts to present the question to a jury.  To the

20  extent the Court disagrees, Plaintiffs are prepared, and request leave, to amend their Complaint

21  to detail their diagnosis of PTSD, the panic attacks, periods of depression and severe anxiety, and

22  their inability to work as a result of their emotional crises, resulting in lost wages.

23

24      **F.    Linda Mortimer is a Proper Defendant.**

25      Defendants argue that including Linda Mortimer as a defendant "does not affect the

status of the couple's community property."  (ECF 16, p. 15) (citing *Twin Falls Bank & Trust*

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 19

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER



1  *Co. v. Holly*, 111 Idaho 349, 353, 723 P.2d 893 (1986).  Notably, however, the court in *Holly*

2  confirmed that community property may be reached by a creditor of one spouse:

> [U]nder the community property system in Idaho and I.C. § 32–912 … when
> either member of the community incurs a debt for the benefit of the community,
> the property held by the marital community becomes liable for such a debt and the
> creditor may seek satisfaction of his unpaid debt from such property.

6  *Id.* (citing *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974)).

7  Defendants insinuate that because the court in *Holly* dismissed the claims against the

8  wife, so too must Mrs. Mortimer be dismissed from this lawsuit.  The defendants fail to inform

9  the Court that the result reached in *Holly* was based on the fact that the defendant was no longer

10  married to the debtor, and the community no longer existed. Thus, the conclusion reached by the

11  court in *Holly* is inapposite to the present case. The Court should not be persuaded by the

12  defendants' misleading use of the holding in *Holly*.

13  The seminal case in Idaho is *Hegg v. IRS*, wherein the Court evaluated whether "under

14  Idaho law, if one spouse commits fraud during marriage and thereby incurs a debt, may

15  community assets be reached to satisfy that debt even if the other spouse is completely innocent

16  of the fraud and has no personal liability for the debt?"  136 Idaho 61, 62, 28 P.3d 1004 (2001).

18  The Court, in its conclusion, answered simply:

> Community assets may be reached to satisfy a debt incurred by one spouse's fraud
> committed during marriage even if the other spouse is completely innocent of the
> fraud and has no personal liability where the fraud benefits the community or
> occurs during the spouse's management of the community.

22  *Id.* at 63.

23  Here, the argument is analogous: Dr. Mortimer committed a fraud from which the

24  Mortimer community greatly benefited and thus, should be held responsible.

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 20

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

## II.    CONCLUSION

2      In consideration of the arguments and authority presented herein, the Plaintiffs

3  respectfully request that the Court deny Defendants motions to dismiss (ECF 16, 17).

4      DATED this 8th day of August, 2018.

5
                                        *s/Jillian A. Harlington*
6                                       Shea C. Meehan, ISB #6407
                                        Jillian A. Harlington, *Pro Hac Vice*
7                                       Attorneys for Plaintiffs
                                        Walker Heye Meehan & Eisinger, PLLC
8                                       1333 Columbia Park Trail, Ste 220
                                        Richland, WA 99352
9                                       Telephone: (509) 735-4444
                                        Fax: (509) 735-7140
10                                      E-mail: smeehan@walkerheye.com;
                                        jharlington@walkerheye.com
11
12                                      Mathew M. Purcell, *Pro Hac Vice*
                                        Attorneys for Plaintiffs
13                                      Purcell Law, PLLC
                                        2001 N. Columbia Center Blvd
14                                      Richland, WA 99352
                                        Telephone: (509) 783-7885
15                                      Fax: (509) 735-7886
                                        E-Mail: mp@purcellfamilylaw.com
16
17
18
19
20
21
22
23
24
25

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 21

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

## <u>CERTIFICATE OF SERVICE</u>

2

I HEREBY CERTIFY that on the 8th day of August, 2018, I filed the foregoing

3

electronically through the CM/ECF system, which caused the following parties or counsel to be

4

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

5

6

| J Michael Wheiler: | wheiler@thwlaw.com, dansie@thwlaw.com |

| Richard R. Friess: | friess@thwlaw.com, pond@thwlaw.com |

7

8

| Portia L Rauer: | plr@powerstolman.com, kja@powerstolman.com |

| Raymond D Powers: | rdp@powerstolman.com, crb@powerstolman.com |

9

10

And I hereby certify that I have mailed by United States Postal Service a copy of the

11

document to the following non-CM/ECF participant: *NONE.*

12

13

*s/Jillian A. Harlington*

14

Shea C. Meehan, ISB #6407
Jillian A. Harlington, *Pro Hac Vice*

15

Attorneys for Plaintiffs
Walker Heye Meehan & Eisinger, PLLC

16

1333 Columbia Park Trail, Ste 220
Richland, WA 99352

17

Telephone: (509) 735-4444
Fax: (509) 735-7140

18

E-mail: smeehan@walkerheye.com;
jharlington@walkerheye.com

19

20

21

22

23

24

25

MEMORANDUM IN OPPOSITION OF
DEFENDANTS' MOTIONS TO DISMISS - 22

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC