Raymond D. Powers
ISB # 2737; rdp@powerstolman.com
Portia L. Rauer
ISB # 7233; plr@powerstolman.com
POWERS TOLMAN FARLEY, PLLC
702 West Idaho Street, Suite 700
Boise, ID 83702
Post Office Box 9756
Boise, ID 83707
Telephone:  (208) 577-5100
Facsimile:  (208) 577-5101
W:\41\41-036\Motions\MTD\MTD-Reply.docx

Attorneys for Defendants Gerald E. Mortimer, M.D.
    and Linda G. McKinnon Mortimer

## IN THE UNITED STATES DISTRICT

## COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLI ROWLETTE, an individual, SALLY ASHBY, an individual, and HOWARD FOWLER, an individual, | Case No.  4:18-CV-00143-DCN |
| Plaintiffs, | **DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| GERALD E. MORTIMER, M.D., LINDA G. McKINNON MORTIMER, and the marital community comprised thereof, and OBSTETRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A. an Idaho professional corporation, | |
| Defendants. | |

COME NOW, Defendants Gerald E. Mortimer, M.D. and Linda G. McKinnon Mortimer
(hereinafter "Defendants") by and through their undersigned counsel of record, Powers Tolman

Farley, PLLC, and respectfully submit this reply memorandum in support of Defendants' previously filed motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(c), Fed R. Civ. P.[1]

## I.     INTRODUCTION

Defendants filed their motion to dismiss claiming that all of Plaintiffs' causes of action were barred by either the applicable statute of limitations, precluded by Idaho Code § 6-1012, or failed to state a claim upon which relief could be granted.

In response, Plaintiffs filed their opposing memorandum that argues Defendants' assertions are largely "preposterous," "offensive," and "repugnant."[2] Moreover, Plaintiffs appeal to the facts of the matter, portraying Dr. Mortimer as a sinister physician with the ambition of secretly impregnating his patients for some unknown benefit. Although in a proper forum those statements would be rebutted, the issue is whether Plaintiffs have plead claims upon which relief can be granted. On review of the applicable law and the facts as Plaintiffs' have plead them, Plaintiffs arguments are without merit and the Complaint should be dismissed in its entirety.[3]

## II.     ARGUMENT

### A.     The Gravamen Of Plaintiffs' Complaint Is In Malpractice.

Plaintiffs rightly admit that when the gravamen of a complaint is in malpractice, all other claims are precluded.[4] Plaintiffs argue they can avoid this result with a piecemeal approach, with Ashby pursuing a claim of malpractice and Fowler and Rowlette pursuing the remaining claims. Plaintiffs' efforts fail for two reasons: first, they cite no authority that allows for the proposed approach; and second, the gravamen of the action is determined by the substance of the complaint, not the form it is given. *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 148, 90 P.3d 894, 898 (2004).

The gravamen, or material part of the complaint, is determined by identifying the conduct the complaint is based on. *Obb Personenverkehr AG v. Sachs*, 136 S.Ct. 390, 392 (2015); *Oakes v. Boise Heart Clinic Physicians*, PLLC, 152 Idaho 540, 545. 272 P.3d 512, 517 (2012). In the

---

[1] Defendants motion to dismiss was originally based on Rule 12(b)(6) of the Fed. R. Civ. P. but was automatically converted to a motion based on Rule 12(c) as Defendants opted to file their motion after their pleadings.

[2] Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp Memo.") (Dkt. 29) p .3-4, filed on August 8, 2018, on file herein.

[3] To the extent certain of Plaintiffs' arguments are not addressed herein, in the interest of brevity, Dr. Mortimer relies upon his moving papers and reserves the right to address those issue at oral argument.

[4] *Id*., p. 17.

DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS  - 2

context of malpractice, the court looks to whether the injury complained of arose from a wrongful act or omission performed as part of professional services. *Lapham v. Steward*, 137 Idaho 582, 589, 51 P.3d 396, 403 (2002); *Hayward v. Valley Vista Care Corp*., 136 Idaho 342, 350, 33 P.3d 816, 824 (2001) (holding gravamen is centered in medical malpractice when claim arises from provision of or failure to provide health care, regardless of how a plaintiff may label their claim). Given the precluding effect of malpractice claims, some plaintiffs have attempted to characterize claims against professionals as beyond the scope of the defendant's professional services, thus allowing claims other than malpractice, but these attempts have been rejected.

For example, in *Lapham*, the plaintiff hired an attorney to create a loan agreement, and then disburse the loan funds only when authorized. *Lapham*, 137 Idaho at 584, 51 P.3d at 398. When the attorney disbursed the funds without prior authorization, the plaintiff alleged damage and brought a breach of contract claim against his attorney. *Id*. Plaintiff argued the specific act of disbursing funds did not require a license, and thus a contract claim could be maintained. *Id*. at 588, 51 P.3d at 402. The court disagreed, reasoning that when determining whether an action is based in malpractice, the focus is not on each individual act of a professional, but whether the wrongful act or omission occurred as part, or in the course of, professional services. *Id., * at 589, 51 P.3d at 403. Since the disbursement of funds was undeniably part of the attorney executing a loan agreement, the plaintiff's only recourse was in malpractice. *Id*.

Similarly, in *Hough v. Fry*, 131 Idaho 230, 953 P.2d 980 (1998), the plaintiff was injured while receiving physical therapy. To avoid the exacting requirements of Idaho Code § 6-1012, the plaintiff characterized her claim as ordinary negligence arguing that the specific act she complained of −her physical therapist negligently assisting her in a balancing exercise− did not require advanced skill or knowledge. *Id., * at 233, 953 P.2d at 983. The court refused this characterization, explaining that the provision of health care is viewed as a single act, not a series of steps, and moreover, plaintiff's injury clearly arose while receiving physical therapy, a form of health care. *Id.*

In the present matter, Plaintiffs admit they engaged Dr. Mortimer to receive assistance in conceiving a child, and that several artificial insemination procedures were performed to achieve that goal. Moreover, Plaintiffs claimed damages arose from Dr. Mortimer's wrongful acts during one of those procedures. Since it cannot be reasonably disputed that  artificial insemination is a form of health care, and the Plaintiffs' claimed damages occurred during such a procedure, the gravamen of this matter is in malpractice. Plaintiffs attempts to characterize this action as outside

the scope of malpractice are identical to plaintiffs' attempts in *Lapham* and *Hough*, and Plaintiffs attempts should meet the same result. Since this action is centered in malpractice, all other claims are precluded as a matter of law.

**B.     Plaintiffs Have Failed To Plead Fraudulent Concealment**

      *1.     Fraudulent concealment applies only to malpractice claims.*

Plaintiffs claim the fraudulent concealment exception provided by Idaho Code § 5-219(4) applies to *all* of their claims, not just malpractice, based on the professional relationship between the parties. Plaintiffs acknowledged the Idaho Supreme Court stated otherwise in *Glaze v. Deffenbaugh*, 144 Idaho 829, 832, 172 P.3d 1104, 1107 (2007) where the court refused to apply the fraudulent concealment exception to a battery claim, stating that fraudulent concealment applied to malpractice. Plaintiffs argue that statement in *Glaze* was erroneous and "not crafted thoughtfully", and a more accurate interpretation of the law is that fraudulent concealment applies to any claim arising from the professional relationship, not just malpractice.[5]

Plaintiffs' error is corrected, however, by the gravamen analysis. Although Idaho Code § 5-219(4) allows for fraudulent concealment when the claim arises from a professional relationship, Plaintiffs fail to appreciate that when a claim does arise from the professional relationship, the gravamen of the action is malpractice, precluding all other claims. The court in *Glaze* understood the preluding effect of malpractice, as it has been well-litigated in Idaho. So, the court stating that fraudulent concealment is reserved for matters of malpractice was not the absent-minded statement Plaintiffs claim it to be, but rather a concise statement of law. *Id.*, 144 Idaho at 832, 172 P.3d at 1107.

      *2.     Plaintiffs have failed to plead fraudulent concealment with particularity.*

A claim of fraudulent concealment is not governed by the plausibility standard of Fed. R. Civ. P. 8(a)(2), but the more scrutinized pleading standard of Rule 9(b). *See Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 307, 698 P.2d 365, 369 (1985); *McCoy v. Lyons*, 120 Idaho 765, 779, 820 P.2d 360, 374 (1991); *Tingley v. Harrison*, 125 Idaho 86, 90, 867 P.2d 960, 964 (1993) (holding party asserting fraudulent concealment must state circumstances of fraud with particularity). In pleading fraudulent concealment, the allegation must be accompanied by the "who, what, when, where, and how" of the fraudulent concealment. *Vess v. Ciba-Geigy Corp.*

---

[5] *Id.*, P. 7.

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Although the court on a motion to dismiss views all facts in favor of the non-moving party, the court cannot consider facts beyond the complaint. *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997).

As Defendants have already asserted, a person cannot fraudulently conceal that which they are obligated to conceal.[6] To combat that logical conclusion, Plaintiffs argue that their claim of fraudulent concealment "must be taken at face value,"[7] and moreover, Plaintiffs attempt to add facts to their Complaint by claiming anonymity is a "two-way street."[8] Specifically, Plaintiffs claim their identity was to remain anonymous to the sperm donor, an allegation absent from Plaintiffs' Complaint.

However, even if Dr. Mortimer was required to ensure Plaintiffs' anonymity, Dr. Mortimer's failing to adhere to that provision is a breach of that agreement, not fraudulent concealment. Plaintiffs do not allege in their Complaint, or even in the added verbiage of their opposing memorandum, that Dr. Mortimer represented to the Plaintiffs they were anonymous as to the donor. This is problematic given the heightened pleading standard of fraudulent concealment.

The only instance in which Plaintiffs claim Dr. Mortimer offered a representation is Dr. Mortimer allegedly representing to Plaintiffs that he had semen from a donor that matched Plaintiffs' specified criteria.[9] Critically, that representation was made before Ashby's first insemination procedure in June 1980.[10] That procedure ultimately failed, and several more were attempted in July and August. These additional procedures required Fowler to produce additional semen on multiple occasions. Since additional semen was required of Fowler, Plaintiffs would have known additional semen would be needed from a sperm donor.[11] However, Plaintiffs do not allege Dr. Mortimer made any additional representations prior to the July and August procedures that he had obtained additional semen from the donor he had previously identified. Notably, Plaintiffs do not allege they inquired into whether Dr. Mortimer obtained additional semen from

---

[6] Defendants' Memorandum in Support of Motion to Dismiss p. 4, on file herein.
[7] Opp Memo p. 8.
[8] *Id.* ¶ 3.
[9] Complaint and Demand for Jury Trial ("Comp.) (Dkt. 1), filed March 30, 2018, ¶ 14, on file herein.
[10] *Id.* ¶ 18.
[11] *Id.* ¶ 15.

the donor he specified in June. Such an inquiry would have been reasonable given Fowler's multiple donations and Plaintiffs' highly particular donor requirements.

Importantly, Ashby conceived in August 1980 as a direct result of one of the August procedures. Since conception occurred as a result of one of the August insemination procedures, whatever damages Plaintiffs now allege arose during that procedure. However, as stated above, Plaintiffs do not allege that Dr. Mortimer made representations regarding the semen used in that (or any) August procedure. Given the absence of any allegations of misrepresentation of Dr. Mortimer pertaining to the ultimately successful August procedure, coupled with the fact Dr. Mortimer was obligated to keep the donor anonymous, Plaintiffs have failed to plead fraudulent concealment by any standard, much less the heightened standard required by Rule 9(b). Consequently, Plaintiffs' malpractice claim is not tolled by the fraudulent concealment exception of Idaho Code § 5-219(4) and is therefore time barred.

**C.    Equitable Estoppel Is Not Applicable Because Plaintiffs Have Not Been Prejudiced.**

Although equitable estoppel remains a remedy in Idaho, Plaintiffs can only assert equitable estoppel when defendants make a false representation or concealment that plaintiffs rely upon to their prejudice. *Twin Falls Clinic & Hospital Bldg. Corp. v. Hamill*, 103 Idaho 19, 22, 644 P.2d 341, 344 (1982); *J.R. Simplot Co. v. Chemetics Intern., Inc*., 126 Idaho 532, 534, 887 P.2d 802, 808 (1963).[12]

As explained above, Dr. Mortimer was obligated to conceal the donor's identity, and moreover, did not make a false representation regarding the ultimately successful August procedure resulting in Ashby's pregnancy. The absence of facts to the contrary results in Plaintiffs failing to establish the first element of equitable estoppel. However, even if Plaintiffs established a false representation was made, Plaintiffs have failed to plead facts showing they suffered prejudice because of any act or representation made by Dr. Mortimer.

To establish prejudice, plaintiffs must prove they relied on a defendant's false representation or concealment to such a degree they changed their conduct based on that misrepresentation. *Willig v. State, Dept. of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995). Moreover, the change of conduct must have caused plaintiff material and substantial

---

[12] Although presently separate claims in Idaho, equitable estoppel and fraudulent concealment are considered one and the same in many jurisdictions. *See Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)(Equitable estoppel is sometimes referred to as fraudulent concealment); *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)(fraudulent concealment is based on equitable estoppel).

DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS  - 6

injury. *Id.*; *Ladd Const. Co. v. Insurance Co. of North America*, 391 N.E. 568, 573 (Ill. Ct. App. 1979); *Boesiger v. Freer*, 85 Idaho 551, 561, 381 P.2d 802, 808 (1963). In the present matter, Plaintiffs have failed to identify how any representation by Dr. Mortimer caused Plaintiffs to alter their conduct, and certainly not such a change that resulted in any material or substantial harm.

This is made clear by the Plaintiffs' inability to articulate their damages with any specificity. Plaintiffs make vague assertions their claim did not accrue until they discovered Dr. Mortimer's "violation of their trust."[13] Similarly, Plaintiffs claim they relied on Dr. Mortimer which caused them to suffer the "damages they now complaint of," without identifying what those damages actually are.[14] This vague illusion to damages is also contained in the Complaint where Plaintiffs claim Dr. Mortimer breached the standard of care causing Plaintiffs to "suffer damages."[15] A detailed review of Plaintiffs' Complaint and subsequent briefing reveals Plaintiffs' damages remain unidentified, and are the subject of speculation.

Ashby and Fowler have not alleged that if they had promptly discovered Dr. Mortimer was Rowlette's biological father they would have aborted the pregnancy or opted for adoption. Nor is there any allegation that Rowlette was a burden or that Ashby and Fowler now regret her existence. Absent these allegations, Plaintiffs have failed to show how any misrepresentation by Dr. Mortimer caused them to change their conduct to any extent, nor have they specified how Dr. Mortimer caused them substantial or material harm. Absent these facts illustrating prejudice, equitable estoppel is not applicable in this matter.

**D.**     **Plaintiffs' Claims Of Emotional Distress Should Be Dismissed As They Are Time Barred And Fail To State Any Physical Injury Arising from Their Emotional Distress.**

      **1.**     ***The doctrine of continuing torts is not applicable.***

Plaintiffs argue the doctrine of continuing torts allows their claims of emotional distress to avoid the applicable statute of limitations because Dr. Mortimer's concealment is the tortious conduct that lead to their emotional distress.[16] In *Glaze v. Deffenbaugh*, the plaintiffs attempted an identical claim, arguing that their father's act of concealing a battery against them 25 years prior amounted to emotional distress. The court rejected that claim, stating plainly there was "no

---

[13] Opp Memo., pp. 4-5.
[14] *Id.* p. 15.
[15] Comp., ¶ 30.
[16] Opp Memo., p. 10.

authority for the proposition that silence or concealment under these circumstances constitutes a wrongful act giving rise to a continuing claim for intentional infliction of emotional distress." *Glaze*, 144 Idaho at 833, 172 P.3d at 1108. Plaintiffs' attempts to differentiate their continuing tort claim from the plaintiffs' claim in *Glaze* in disingenuous given the court's patently clear rejection of the idea that concealment or silence could be considered the tortious conduct resulting in emotional distress, the exact argument Plaintiffs made here. Given the clear ruling offered in *Glaze*, Plaintiffs' argument of continuing tort should fail.

Plaintiffs repeatedly attempt to recast arguments made in *Glaze* for use in this matter, specifically Plaintiffs attempt to extend the applicability of fraudulent concealment and the use of continuing tort to argue silence or concealment may result in emotional distress. It must be noted that plaintiffs' counsel in *Glaze* was sanctioned for putting forth such implausible claims. The court acknowledged the plaintiffs' "tragic plight" in referring to the sexual battery endured at the hands of the plaintiffs' father but explained that tragic facts did not grant plaintiffs' license to put forth groundless claims. *Id.,* at 833, 172 P.3d at 1108.

Here, like the plaintiffs in *Glaze,* Plaintiffs have put forth implausible legal theories, and do so without the same "tragic plight." Plaintiffs were aware of *Glaze*, and unwisely followed the strategy of plaintiffs that lead to dismissal and sanctions. Since Plaintiffs knowingly put forth nearly identical legal theories, Plaintiffs should be met with the same consequences.

2. ***Plaintiffs fail to claim any physical injury arising from their emotional distress.***

In Defendants' moving papers, they cited to the Idaho Supreme Court ruling in *Hopper v. Swinnerton*, 155 Idaho 801, 810, 317 P.3d 698, 707 (2013) which established that all claims of emotional distress, including intentional infliction of emotional distress ("IIED"), must include some physical injury resulting from the emotional distress. Contrary to the *Hopper* ruling, Plaintiffs argue claims for IIED do not require physical injury arising from the emotional distress.[17] To support their position, Plaintiffs cite *Alderson v. Bonner,* 142 Idaho 733, 741, 132 P.3d 1261 (Ct. App. 2006), an Idaho Court of Appeals case that clearly precedes *Hopper*. Plaintiffs offer no explanation as to why the *Hopper* case is not controlling in this matter and instead have ignored its precedent. Since *Hopper* is controlling in this matter, and Plaintiffs have failed to plead a

---

[17] *Id.* p. 18.

physical injury required of a claim of IIED, Plaintiffs' emotional distress claims should be dismissed.

Notably, the emotional distress Rowlette suffered was not the discovery that Dr. Mortimer was her biological father, but her discovery that Fowler was not her biological father. Rowlette would have suffered upon such a discovery regardless of the name identified on the DNA match at issue. Rowlette's understandable shock was caused by her parent's concealment, not Dr. Mortimer's.

**E.       Informed Consent Only Requires Disclosure of Risks.**

Plaintiffs claim the law of informed consent as it existed in 1980 required the disclosure of "material aspects" of a procedure, to which Plaintiffs cite *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980) as support. However, the court in *LePelley* recognized a claim of informed consent was a matter of first impression in Idaho, and adopted the rule articulated by the California Supreme Court in *Cobbs v. Grant*, 502 P.2d 1, 7 (Cal. 1972) which imposed upon physicians the duty to disclose all risks and inherent dangers related to proposed therapies. *LePelley*, 101 Idaho at 429, 614 P.2d at 969 (citing *Cobbs*, 502 P.2d at 10); *Sherwood v. Carter*, 119 Idaho 246, 251, 805 P.2d 452, 457 (1990)(citing *LePelley* for the proposition that the doctrine of informed consent is the general principle that a physician has a duty to disclose risks of a proposed treatment).

Here, Plaintiffs have not alleged any failure to disclose risks pertaining to the artificial insemination procedures performed by Dr. Mortimer. Any failure to disclose the identity of a sperm donor who was to remain anonymous is not akin to the failure to disclose a risk. Absent any allegation of an undisclosed risk, Plaintiffs' claim of informed consent requires dismissal as a matter of law, whether under current law or as it existed in 1980.

**F.       Leave to Amend Should Not Be Granted.**

Plaintiffs should not be granted leave to amend their Complaint to cure the deficiencies at issue.  Leave to amend is improper if it is clear amendment cannot save the complaint. *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1118 (9th Cir. 2013). Here, Plaintiffs' claims warrant dismissal because they have been insufficiently plead. However, even if the required facts were added to the Complaint, their claims are still either barred by the applicable statute of limitations or precluded by Idaho Code § 6-1012. Consequently, leave to amend is improper since the amendments are futile.

### III.    CONCLUSION

All of Plaintiffs' claims are barred by the applicable statute of limitations, precluded by Idaho Code § 6-1012, and have been insufficiently plead. Therefore, Plaintiffs' Complaint and Demand for Jury Trial should be dismissed in its entirety.

DATED this 22nd day of August, 2018.

POWERS TOLMAN FARLEY, PLLC


By /s/ Portia L. Rauer _____
      Raymond D. Powers - Of the Firm
      Portia L. Rauer - Of the Firm
      *Attorneys for Defendants Gerald E. Mortimer,*
      *M.D. and Linda G. McKinnon Mortimer*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd  day of August, 2018, I caused to be served a true copy of the foregoing **DEFENDANTS GERALD E. MORTIMER, M.D. AND LINDA G. McKINNON MORTIMER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jillian A. Harlington, jharlington@walkerheye.com
Matthew M. Purcell, mp@purcellfamilylaw.com
Shea C. Meehan*,* smeehan@walkerheye.com
*Attorneys for Plaintiffs*

J. Michael Wheiler, wheiler@thwlaw.com
Richard R. Friess*,* friess@thwlaw.com
*Attorneys for OB-GYN Associates*


                    /s/ Portia L. Rauer _____
                    Raymond D. Powers
                    Portia L. Rauer