J. Michael Wheiler, ISB #3364
wheiler@thwlaw.com
Richard R. Friess, ISB #7820
friess@thwlaw.com
THOMSEN HOLMAN WHEILER, PLLC
2635 Channing Way
Idaho Falls, ID 83404
Tel: (208) 522-1230
Fax: (208) 522-1277

Attorneys for Defendant Obstetrics & Gynecology Associates of Idaho Falls, P.A.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLI ROWLETTE, an individual, SALLY ASHBY, an individual, and HOWARD FOWLER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GERALD E. MORITMER, M.D., LINDA G. McKINNON MORTIMER, and the marital community comprised thereof, and OBSTETRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A., an Idaho professional corporation, <br><br> Defendants. | Case No. 4:18-CV-00143-DCN <br><br><br> REPLY MEMORANDUM IN SUPPORT OF DEFENDANT OBSTETRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A.'S MOTION TO DISMISS |

COMES NOW, Defendant Obstetrics and Gynecology Associates of Idaho Falls, P.A., ("OGA") and pursuant to F.R.C.P. 12(b)(6) submits the following Reply Memorandum in Support of Motion to Dismiss.

## ARGUMENT

**I.  PLAINTIFFS' CLAIMS FOR BATTERY, INFLICTION OF EMOTIONAL DISTRESS, AND BREACH OF CONTRACT ARE BARRED BY THE STATUTE OF LIMITATIONS.**

   i.  *Plaintiffs' claims did not accrue upon discovery of "some damage."*

Plaintiffs argue that their claims are not barred by the statute of limitations because they did not accrue until they suffered "some damage." Plaintiffs cite *Lapham v. Stewart*, 137 Idaho 582 (2002) in support of their argument, which states that "[u]ntil some damage occurs, a cause of action for professional malpractice does not accrue." *Id.* at 586. Plaintiffs allege that they did not suffer "some damage" "until they learned of Dr. Mortimer's violation of their trust" which occurred when they discovered Dr. Mortimer allegedly used his own sperm to impregnate Ms. Ashby. Dkt 29, p. 4. Plaintiffs' argument amounts to a discovery rule, which the Idaho Supreme Court has explicitly rejected, and also fails to take into account how the "some damage" principle has been defined and applied by the Idaho Supreme Court.

The Idaho Supreme Court discussed the "some damage" principle in *Conner v. Hodges,* 157 Idaho 19 (2014).

> In *Davis v. Moran*, this Court explained that when determining whether "some damage" has occurred, the trial court is to identify the point at which the "fact of injury becomes objectively ascertainable." 112 Idaho 703, 709, 735 P.2d 1014, 1020 (1987). By "objectively ascertainable," "we mean that objective medical proof would support the existence of an actual injury." *Id.* at 709 n.4, 735 P.2d at 1020 n.4. The concept of an "'objectively ascertainable' injury' is simply an analytical tool to be used in determining when 'some damage' has occurred." *Conway*, 141 Idaho at 146-47, 106 P.3d at 472-73.

*Id.* at 24.

In *Stuard v. Jorgenson,* 150 Idaho 701 (2011), the Idaho Supreme Court expressly rejected Plaintiffs' argument that "some damage" does not occur until the damage is discovered.

> The language of *Davis* defining "objectively ascertainable" to mean "that objective medical proof would support the existence of an actual injury," means that the existence of the injury is capable of being objectively ascertained. *Davis*, 112 Idaho at 709 n. 4, 735 P.2d at 1020 n. 4. To allow for accrual to begin only once the parties have been put on notice of the damage, or in other words, once the damage is actually "ascertained" would effectively create a discovery rule, which the legislature has rejected.

*Id.* at 706.

The *Stuard* case is right on point and instructive in this case. In *Stuard*, the physician performed a spinal surgery at the wrong level. *Id.* at 702. Despite this, the operation relieved the plaintiff's symptoms. *Id.* The error was not discovered until two years later when another MRI was performed. *Id.* at 703. The district court found that the medical malpractice claim was time barred under I.C. § 5-129(4) and dismissed the plaintiff's claim. *Id.* The Idaho Supreme Court affirmed the dismissal, explaining that the "removal of healthy tissue and the installation of hardware at the wrong level," was objectively ascertainable at the time of the negligently performed surgery "because **had objective medical proof in the form of an MRI been ordered, it would have shown that the surgery was performed at the wrong level, and that Stuard had suffered damages as a result of its performance at the wrong level**." *Id.* at 706 (emphasis added).

The *Stuard* decision reveals the error in Plaintiffs' argument that "some damage" does not occur until discovery of the alleged injury. If Plaintiffs' position were correct the plaintiff's claim in *Stuard* would not have been dismissed because the claim was brought within 2 years of discovery of the injury.

In this case, Plaintiffs' damages were objectively ascertainable through a DNA test.[1] According to Plaintiffs, it would have shown that Dr. Mortimer, not Fowler, was Rowlette's biological father. This would have been "objective medical proof that would support the existence of an injury," thus making Plaintiffs' alleged injuries capable of being objectively ascertained.[2]

---

[1] Paternity identification through DNA testing has been readily available for decades. *See Henderson v. Smith*, 128 Idaho 444 (1996).
[2] Plaintiffs confusingly argue that their claims did not accrue until after they suffered "some damage" because they are claims for professional malpractice but also state that Fowler's and Rowlette "are not

3 –   MEMORANDUM IN SUPPORT OF DEFENDANT OBSTETRICS AND GYNECOLOGY
        ASSOCIATES OF IDAHO FALLS, P.A.'S MOTION TO DISIMISS

Plaintiffs contend that they had no reason to suspect that Dr. Mortimer used his own sperm to impregnate Ashby and therefore had no reason to request or conduct a DNA test. However, the law only requires that the damage be "objectively ascertainable" and does not consider whether or not a plaintiff has reason to suspect or believe that an injury has occurred. Indeed, the plaintiff in *Stuard* had no reason to suspect an injury had occurred and the claim was still dismissed nonetheless.

      ii.    *Plaintiffs' personal injury claims are not tolled by the fraudulent concealment exception.*

Plaintiffs also argue that the tolling provision of I.C. § 5-219(4) for fraudulent concealment applies to all of their personal injury claims. Plaintiffs' argument is not supported by the language of I.C. § 5-219(4) or Idaho case law.

I.C. § 5-219(4) states in relevant part:

> when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer **standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party**, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of;

*Id.* (emphasis added).

The Idaho Supreme Court has expressly noted that the fraudulent concealment tolling provision only applies to professional malpractice claims.

> Counsel for the daughters argued that they are entitled to the fraudulent concealment exception in I.C. § 5-219(4) because the parties were in a parent-child relationship and because Deffenbaugh concealed his alleged molestation of each daughter from the other. It is asserted that the concealment ended only in 2003 when each daughter learned that the other had been molested and Deffenbaugh purportedly admitted to the molestation. This contention is without

---

pursuing claims under theories of medical malpractice" and that "their damage does not arise from Dr. Mortimer's negligence in their care.'" Dkt. 29, p. 17. One must ask how Fowler and Rowlette's claims did not accrue until they suffered some damage if their claims are not based on professional malpractice, a requirement for the "some damage" principle to be applicable.

merit. **I.C. § 5-219(4) applies to professional malpractice claims**, not claims of the nature alleged in this case. Even then, the fraudulent concealment must be concealment practiced upon the injured party, not upon a third party.

*Glaze v. Deffenbaugh,* 144 Idaho 829, 832 (2007) (emphasis added).

The fraudulent concealment tolling therefore does not apply to Plaintiffs' personal injury claims.

Moreover, in order for the fraudulent concealment tolling provision to be applicable, § 5-219(4) requires that that the alleged wrongdoer be in a professional or commercial relationship with the injured party at the time of the wrongful act. In order for a physician to be in professional relationship with a plaintiff, they must be involved in the provision of health care. As discussed in part II below, if a claim involves the provision of or failure to provide health care, it is by definition a malpractice claim subject to I.C. § 6-1012, which precludes all other claims. This includes Plaintiffs' claims for breach of contract, battery, and infliction of emotional distress.

    *iii.*  *Equitable estoppel does not apply to Plaintiffs' claims.*

Plaintiffs contend that equitable estoppel precludes Defendants from benefitting from the statute of limitations defense because Dr. Mortimer fraudulently concealed material facts. The Idaho Supreme Court discussed equitable estoppel in *Sorenson v. Saint Alphonsus Regional Med. Ctr.,* 141 Idaho 754 (2005).

> Four elements are required in order to establish a claim for equitable estoppel: 1) there must be a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; 2) the party asserting estoppel did not and could not have discovered the truth; 3) there was intent that the misrepresentation be relied upon; and 4) the party asserting estoppel relied upon the misrepresentation or concealment to his or her prejudice. *Willig v. State, Dept. of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995); *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 5, 607 P.2d 1055, 1059 (1980). "All of the above factors are of equal importance and there can be no estoppel absent any of the elements." *Tommerup,* 101 Idaho at 6, 607 P.2d at 1060.

*Id.* at 759.

In this case, Plaintiffs cannot establish that they could not have discovered the truth. As discussed above, Plaintiffs could have discovered the truth DNA testing.

With respect to Rowlette, she cannot establish the first and fourth elements because Dr. Mortimer never made a representation to her. A review of Plaintiffs' Complaint reveals no allegations that Dr. Mortimer made any representation to Rowlette. Plaintiffs even fail to argue in their *Memorandum in Opposition* that Dr. Mortimer made any representation to Rowlette about using sperm from an anonymous donor. Indeed, it is impossible for Dr. Mortimer to have done so since Rowlette was not yet conceived when Dr. Mortimer made the alleged representation that serves as the basis for Plaintiffs' equitable estoppel argument.

The lack of any representation from Dr. Mortimer to Rowlette means she cannot establish the first element of equitable estoppel. In addition, if no representation was made, there could be no reliance on a misrepresentation. Thus, Rowlette also cannot establish the fourth element of equitable estoppel.

    iv. *Plaintiffs' claims for emotional distress are not continuing torts.*

In *Curtis v. Firth,* 123 Idaho 598 (1993), the Idaho Supreme Court stated:

> We note, however, that embracing this concept [of a continuous tort] in the area of intentional or negligent infliction of emotional distress does not throw open the doors to permit filing these actions at any time. The courts which have adopted this continuing tort theory have generally stated that **the statute of limitations is only held in abeyance until the tortious acts cease**. See, e.g., Page, 729 F.2d at 818 and Twyman v. Twyman, 790 S.W.2d 819 (Tex.App.1990). At that point the statute begins to run. If at some point after the statute has run the tortious acts begin again, a new cause of action may arise, but only as to those damages which have accrued since the new tortious conduct began.

*Id*. at 604 (emphasis added).

Plaintiffs argue that their claims for infliction of emotional distress constitute a continuing tort. Specifically, Plaintiffs contend that Dr. Mortimer's misconduct did not stop

6 –  MEMORANDUM IN SUPPORT OF DEFENDANT OBSTETRICS AND GYNECOLOGY
   ASSOCIATES OF IDAHO FALLS, P.A.'S MOTION TO DISIMISS

after he allegedly used his own sperm to impregnate Ms. Ashby, but that he has "continued each day for several decades his deception regarding impregnating his patient with his own sperm" and "this continued deception constitutes a continuing tort." Dkt. 29, p. 11. Plaintiffs' argument

Plaintiffs' Complaint only alleges that it was Dr. Mortimer's act of using his own sperm to impregnate Ms. Ashby that caused them emotional distress. Dkt. 1, paras. 45 – 51. According to Plaintiffs, this occurred "in the month of June, July, and August of 1980." Dkt. 1, para. 18. Their Complaint does not allege any other acts by Dr. Mortimer after this date. Thus, the tortious act ceased at the latest in August of 1980. In addition, Plaintiffs failed to allege Dr. Mortimer's alleged continued deception as the basis for their emotional distress claims in their Complaint and cannot now point to it to save claims based on entirely separate conduct.

In addition to their failure to plead concealment as the basis for their emotional distress claims, Plaintiffs have failed to cite any authority for their argument that silence or concealment would even constitute a wrongful act giving rise to a continuous tort for emotional distress. The Supreme Court relied in part on this exact failure when it upheld the dismissal of emotional distress claims in *Glaze v. Deffenbaugh,* 144 Idaho 829 (2007), stating that the plaintiffs "present no authority for the proposition that silence or concealment under these circumstances constitutes a wrongful act giving rise to a continuing claim for intentional infliction of emotional distress." *Id.* at 833.

II. **PLAINTIFFS' CLAIMS ARISE OUT OF THE PROVISION OF OR FAILURE TO PROVIDE HEALTH CARE SOUND IN MALPRACTICE AND ARE THERFORE PRECLUDED.**

Idaho law is clear that whenever the fundamental question in a case is whether a "wrongful act or omission occurred in the course of performing professional services" it is "a question of malpractice." *Hoover v. Hunter,* 150 Idaho 658, 663 (2011). All medical

        ASSOCIATES OF IDAHO FALLS, P.A.'S MOTION TO DISIMISS

malpractice claims are subject to the provisions of I.C. § 6-1012, which requires plaintiffs to prove that the defendant "**negligently** failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided . . . ." I.C. § 6-1012 (emphasis added). Thus, claims for medical malpractice are negligence claims and other causes of action are precluded by the language of I.C. § 6-1012. The Idaho Supreme Court made this clear in *Hayward v. Valley Vista Care Corp.,* 136 Idaho 342 (2001), in which the Court held that where a claim pertains to the provision of or failure to provide health care, I.C. § 6-1012 precludes the bringing of a contract claim. *Id.* at 350.

Similarly, in *Conner v. Hodges,* 157 Idaho 19 (2014) the Idaho Supreme Court stated that "it has long held that when the basis of the action is the provision of or failure to provide health care, then the gist of the action is negligence and not a breach of the contract" and that "when the gravamen of the claim is based on the negligence of a health care professional, the plaintiff is precluded from bringing a contract claim." *Id.* at 25-26 (*quoting Hayward, supra*). The Idaho Supreme Court has applied this same reasoning to other claims besides breach of contract where the gravamen of the complaint is based on the provision of or failure to provide health care. *See Hoover v. Hunter*, 150 Idaho 658 (2011) (I.C. § 6-1012 precludes claim for fraud); *Hall v. Rocky Mountain Emergency Physicians*, 155 Idaho 322 (2013) (holding that when a physician's assistant fondled a patient's breast, a claim for intentional infliction of emotional distress was really an action sounding in malpractice subject to I.C. § 6-1013); *see also Keyser v. St. Mary's Hosp., Inc.,* 662 F. Supp. 191 (D. Idaho 1987) (Consumer Protection Act claim precluded by I.C. § 6-1012).

Plaintiffs have stated that Ashby's claims will only proceed only under a theory of medical malpractice should survive Defendants' Motions to Dismiss. However, Plaintiffs contend that Fowler's and Rowlette's claims do not arise directly from the provision of

medical care as to them and therefore their claims are not subject to the gravamen analysis. Dkt. 29, p. 17. Plaintiffs' argument does not withstand scrutiny.

According to its language, I.C. § 6-1012 applies "to **any** case, claim or action for damages **due to injury to** or death of **any person**, brought against physician and surgeon or other provider of health care . . . or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of **any matter incidental or related thereto**." I.C. § 6-1012 (emphasis added).

Thus, I.C. § 6-1012 is not limited to claims brought by individuals who received the actual health care treatment. By its own language, the statute applies to "any case, claim or action for damages" suffered by "any person" if the claim arises out of the provision of health care "or any matter incidental or related thereto." Fowler and Rowlette's claims qualify as "any case, claim or action for damages." Ashby qualifies under the statute as "any person" and Fowler and Rowlette's claims arise out of Dr. Mortimer's provision of health care to Ashby, thereby qualifying as "any matter incidental and related" to the provision of health care. As a result, the language of I.C. § 6-1012 precludes Plaintiffs' attempt to sidestep the law by arguing that their claims do not sound in malpractice because they were not the recipients of the health care at issue.

In sum, Plaintiffs claims for battery, breach of contract, fraud, infliction of emotional distress, and violation of the Consumer Protection Act arise out of Dr. Mortimer's conduct in providing or failing to provide healthcare to Ashby. The fact that Rowlette and Fowler were not the recipients of the health care at issue makes no difference under I.C. § 6-1012. Plaintiffs cannot circumvent I.C. § 6-1012 by artfully labeling their claims as something other than malpractice or by arguing that Fowler and Rowlette were not the recipients of the health care. These claims should therefore be dismissed.

### III. ROWLETTE'S CLAIMS BASED ON ALLEGED CONDUCT THAT OCCURRED BEFORE SHE WAS CONCEIVED ARE PRECLUDED.

As discussed in OGA's *Memorandum in Support*, Rowlette's claims are not based on treatment Dr. Mortimer provided to her, but arise from treatment he provided to Ms. Ashby before she was conceived. Plaintiffs attempt to cover this deficiency by arguing that Rowlette was Dr. Mortimer's patient because he delivered her, and he signed her birth certificate attesting to her live birth. Dkt. 29, pp. 9-10. This fact, according to Plaintiffs, precludes this Court from dismissing her claims. Plaintiffs' argument is without merit.

Plaintiffs completely ignore the fact that the alleged malpractice in this case occurred before Rowlette was conceived or born. The fact that Rowlette was Dr. Mortimer's patient at a later date does not make her his patient with respect to the alleged malpractice at issue in this case and is irrelevant. No duty can imposed upon a physician without a physician-patient relationship, *see Bishop v. Owens*, 152 Idaho 616,620 (2011) (requiring an attorney-client relationship before a malpractice claim can be established), and it is axiomatic that a physician-patient relationship cannot be formed with an individual who has not been conceived. Thus, Dr. Mortimer did not have a duty to Rowlette at the time of the alleged malpractice and therefore could not have breached any duty to Rowlette. Her claims must therefore be dismissed.

### IV. ANY CLAIMS AGAINST MORTIMER THAT ARE DISMISSED MUST ALSO BE DISMISSED AGAINST DEFENDANT OGA.

Plaintiffs' claims against OGA consist of a respondeat superior claims and a negligent supervision claim. Under the doctrine of respondeat superior, an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment. *Finholt v. Cresto*, 143 Idaho 894, 897 (2007). If the Court dismisses any of Plaintiffs' claims against Dr. Mortimer, then those claims are not viable against OGA under the doctrine of

respondeat superior. Consequently, should the Court dismiss any of Plaintiffs' claims against Dr. Mortimer individually, those claims should likewise be dismissed against OGA.

## CONCLUSION

Plaintiffs' claims for battery, infliction of emotion distress, and breach of contract are barred by their respective statute of limitations. Furthermore, Plaintiffs' claims for fraud, battery, breach of contract, violation of the Consumer Protection Act, and infliction of emotional distress all arise out of the provision of or failure to provide health care and sound in malpractice. As a result, these claims are not viable alternative claims and should all be dismissed.

In addition, Rowlette's claims are based on conduct that occurred prior to her conception. As a result, Dr. Mortimer did not owe her a duty. As a result, Rowlette's claims should be dismissed in their entirety. Should the Court dismiss any other claims against Dr. Mortimer, those claims should also be dismissed against OGA under the doctrine of respondeat superior.

DATED this 22nd day of August, 2018.

By: _____
Richard R. Friess

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system:

Jillian A. Harlington, jharlington@walkerheye.com
Matthew M. Purcell, mp@purcellfamilylaw.com
Shea C. Meehan, smeehan@walkerheye.com
*Attorneys for Plaintiffs*

Raymond D. Powers, rdp@powerstolman.com
Portia L. Rauer, plr@powerstolman.com
*Attorneys for Gerald E. Mortimer, M.D. & Linda G. McKinnon Mortimer*

By: _____
         Richard R. Friess

JMW/7800.037/PLEADINGS/007 REPLY MEMO ISO MOT DISMISS