UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SALLY ASHBY, an individual, and HOWARD FOWLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GERALD MORTIMER, M.D., and OBTESTRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A., an Idaho professional corporation,<br><br>Defendants. | Case No. 4:18-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

The Court has before it Plaintiffs' Motion to Compel a Paternity Test pursuant to Federal Rule of Civil Procedure 35. Dkt. 34. Having reviewed the parties' briefs and the record, the Court finds good cause to GRANT Plaintiffs' Motion, and orders Defendant Gerald Mortimer ("Dr. Mortimer") to submit to a buccal swab paternity test.

## II. BACKGROUND

The facts of this case are set forth in this Court's Order dismissing various parties and granting in part and denying in part Dr. Mortimer's Motion to Dismiss. Dkt. 40. In brief, Plaintiffs Ashby and Fowler are a formerly married couple who became patients of Defendant Obstetrics and Gynecology Associates of Idaho Falls ("OGA"), under the care

of Dr. Mortimer, an OB/GYN, when they struggled to conceive. Upon examination, Dr. Mortimer diagnosed Ashby and Fowler with various fertility issues and recommended that the couple undergo a form of artificial insemination in which donor sperm from an anonymous donor would be mixed with Fowler's sperm in a lab prior to insemination to increase the chances of conception. The couple agreed, and Dr. Mortimer performed the artificial insemination procedure on various occasions in June, July, and August of 1980. In August 1980, Ashby discovered she was pregnant. Ashby gave birth to daughter Kelli Rowlette on May 20, 1980.

Many years later, Rowlette received notification from Ancestry.com that a DNA sample she had submitted matched a sample submitted by Dr. Mortimer. Ancestry.com predicted there was a parent-child relationship between the two individuals based upon the samples it reviewed. Rowlette did not know Dr. Mortimer and was completely unaware that her parents had undergone artificial insemination to help them conceive. Rowlette confronted her parents regarding the Ancestry.com results, and the three ultimately brought the instant suit alleging that instead of using sperm from an anonymous donor, Dr. Mortimer used his own sperm to inseminate Ashby.[1]

---

[1] In its Order granting in part and denying in part Dr. Mortimer's Motion to Dismiss, this Court dismissed Rowlette as a plaintiff in this suit, and also dismissed eight of the nine causes of action originally alleged by Plaintiffs. Dkt. 40. The Court also dismissed Dr. Mortimer's wife, Linda Mortimer, as an improper party to this action. *Id*. The only cause of action that remains at issue in this suit is Fowler and Ashby's medical malpractice claim against Dr. Mortimer and OGA.

MEMORANDUM DECISION AND ORDER - 2

While denying Plaintiffs' allegations, Dr. Mortimer has refused Plaintiffs' request that he submit to a DNA test to prove (or disprove) his paternity of Rowlette. Plaintiffs filed the instant motion to compel Dr. Mortimer's submission to a buccal (cheek) swab DNA test.

### III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a court "may order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed examiner" upon a showing of good cause. Fed. R. Civ. P. 35(a). An order requiring an examination under Rule 35 may be issued only (1) when the mental or physical condition of the party or person in the party's custody is "in controversy" and (2) good cause supports the order. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964)).

A party's mental or physical condition is "in controversy" when such condition is the subject of the litigation. *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D. Florida 1988). "Whether good cause is established depends on both relevance and need." *Pearson v. Norfolk-Southern Ry., Co., Inc.*, 178 F.R.D. 580, 582 (M.D. Alabama 1998) (citations omitted). In determining whether there is need, the court must examine the ability of the movant to obtain the desired information by other means. *Id.* (citing *Schlagenhauf*, 379 U.S. at 118).

While the party seeking the examination must generally establish the "controversy" and "good cause" requirements:

> [T]here are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action.

*Schlagenhauf,* 379 U.S. at 119.

Granting or denying a motion for a physical examination "rests in the sound discretion of the trial court." *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958) (citing *Bucher v. Krause*, 200 F.2d 576, 584 (7th Cir. 1952). Like other rules of discovery, Rule 35 should be "construed liberally in favor of examination, but the Court must balance the right of the party to be examined to avoid personal invasion against the moving party's right to a fair trial." *Does I-XIX v. Boy Scouts of Am.*, 2017 WL 4226401 (D. Idaho 2017) (quoting *Franco v. Boston Scientific Corp.*, 2006 WL 3065580, at *1 (N.D. Cal. Oct. 27, 2006).

## IV. ANALYSIS

In their Motion to Compel, Plaintiffs contend the pleadings alone establish the biological relation between Rowlette and Mortimer is in controversy because, in his Answer to Plaintiffs' Complaint, Mortimer stated he had no recollection of having utilized his sperm in the artificial insemination process of Ashby, and therefore denied that he used his own genetic material in the insemination. Dkt. 34-1, p. 2 (citing *Answer*, Dkt. 13, p. 4). Plaintiffs argue the fact that Dr. Mortimer "must rely on his lack of recall in order to deny the allegation, rather than providing an outright denial or outright

admission, reveals that a paternity test is the only reliable way to obtain evidence that Mortimer and Rowlette are father and daughter." Dkt. 34-1, p. 5. Plaintiffs also suggest the pleadings establish good cause because "the single most important fact in this lawsuit is the allegation that Dr. Mortimer is Rowlette's father, if this allegation proves false, each cause of action alleged by the plaintiffs must necessary fail." *Id.* As such, Plaintiffs maintain there is good cause to order a paternity test because if it is true that Dr. Mortimer did not father Rowlette, the parties should be able to discover that fact before this lawsuit proceeds any further.

Dr. Mortimer responds that the pleadings alone are not sufficient to establish he put his DNA at issue, and that Plaintiffs have not satisfied the "fact intensive" standard required to support good cause. Dkt. 37, pp. 5-8. Dr. Mortimer suggests Plaintiffs put his DNA at issue through the allegations in their Complaint, and that Dr. Mortimer's mere denial of Plaintiffs' allegations does not mean he put his DNA at issue. In addition, Dr. Mortimer contends good cause cannot be established because Plaintiffs can simply rely on the Ancestry.com test. Because the Ancestry.com test is already available, Dr. Mortimer argues forcing him to submit to a cheek swab test would be futile, redundant, and unnecessarily invasive.

In their Reply, Plaintiffs continue to maintain that the pleadings alone meet the "controversy" and "good cause" requirements of Rule 35, but also present facts to establish good cause exists for the DNA test even if Dr. Mortimer's Answer to the Complaint didn't place his biological relation to Rowlette in question by denying

paternity. Plaintiffs argue there is good cause to order Dr. Mortimer to submit to a DNA test because the Ancestry.com test could not serve as conclusive evidence of paternity at trial for several reasons. Specifically, the Ancestry.com test is inadmissible evidence of paternity under Idaho law, there is no documented chain of custody for either Mortimer or Rowlette's DNA samples, and there is no way for an expert to evaluate Ancestry.com's results in light of the chain of custody issue. Dkt. 39, pp. 5-6 (citing Idaho Code § 7-1101 *et. seq*.). Plaintiffs filed the declaration of Dr. Lee W. Parsons in support of their contention that the Ancestry.com test is inadequate evidence to confirm paternity at trial. Dkt. 39-1.

After spending half of his Response brief arguing he did not place his paternity "in controversy" simply by denying the allegations of Plaintiffs' Complaint, Dr. Mortimer admits, in his Sur-Reply, that his DNA is central to this dispute and therefore meets the "controversy" element of Rule 35. Dkt. 42, pp. 2-3. The Court agrees Dr. Mortimer's DNA meets the "controversy" element of Rule 35. The very core of Dr. Mortimer's defense—that he is not Rowlette's biological father because he did not inseminate Ashby with his own sperm—requires an analysis of his DNA to be proven. The "in controversy" requirement is thus satisfied. *See, e.g., Schlagenhauf*, 379 U.S. at 119 (when a Defendant asserts a physical condition—or lack thereof—as a defense to a claim, the pleadings are sufficient to meet the "in controversy" requirement). Having found the "in controversy" element satisfied, the Court proceeds to consider whether there is good cause to order a

DNA test.[2]

Good cause supports a DNA test because Dr. Mortimer's relation to Rowlette is not, contrary to Dr. Mortimer's contention, available through other means. *Schlagenhauf*, 379 U.S. at 118 (the "good cause" determination requires the court to consider the movant's ability to obtain requested information by other means); *Pearson*, 178 F.R.D. at 582 (to establish good cause for an examination, the moving party must demonstrate the examination is necessary by showing that the information it seeks is not available by other means); *D'Angelo v. Potter*, 224 F.R.D. 300, 304 (D. Mass. 2004) (finding good cause to order a DNA examination where plaintiff lacked alternative forms of discovery which would allow her to prove her allegations at trial). Here, the Ancestry.com test does not provide conclusive proof of paternity because, *inter alia*, there is no documented chain of custody. As such, Dr. Mortimer could launch a variety of attacks on the competency of the Ancestry.com results at trial, including: (1) that someone else may

---

[2] Plaintiffs suggest if Dr. Mortimer "has placed his non-paternity at issue as a complete defense to the claims against him, the Rule 35 exam is supported by good cause *per se*." Dkt. 43, p. 3. There is some debate over whether the party seeking examination must also establish good cause even where the party opposing examination has placed a mental or physical condition at issue in the pleadings. "A few courts, without explanation, elide the 'in controversy' and 'good cause' requirements by granting a Rule 35 request where mental or physical health is a significant issue in the case. While recognizing the two requirements 'are necessarily related,' the Court in *Schlagenhauf* made clear that showing 'good cause' requires more than just showing that. . . health is 'in controversy.' The movant must show good cause exists 'for each particular examination[.]'"*Riel v. Ayers*, 2010 WL 1980251, at *1 (E.D. Cal. 2010) (citations omitted). The Court need not resolve the issue here because it finds good cause supports ordering a DNA test independent from consideration of the pleadings.

have produced the saliva in the sample submitted under his name or in the sample submitted under Rowlette's name; (2) that he (or Rowlette) did not follow the appropriate procedures for giving a sample; (3) that excessive heat, cold, age of test, or some other defect before processing by Ancestry.com degraded the accuracy of the results; or (4) that mix-ups at Ancestry.com rendered the results inconclusive.[3] Notably, while Dr. Mortimer argues the Motion to Compel should be denied because "the Ancestry DNA test is identical to the DNA test Plaintiffs now request," he denies paternity despite the Ancestry.com result identifying a parent child relationship between him and Rowlette. Dkt. 37, p. 3. Due to the potential inadequacy of the Ancestry.com test to establish paternity, Plaintiffs cannot obtain conclusive evidence of paternity absent a DNA test.

Dr. Mortimer also argues additional testing would be cumulative and would "distract a juror from the more critical issues regarding whether Dr. Mortimer violated the applicable standard of care and what damages the Plaintiffs actually suffered, if any." Dkt. 42, p. 5. However, Dr. Mortimer does not offer to stipulate to either paternity or to the reliability of the Ancestry.com results and could dispute the accuracy of the results at trial. The question of whether the Ancestry.com results are reliable would create a far

---

[3] The parties spend a portion of their briefs arguing about whether Ancestry.com has a policy that prevents disclosure of its methods or processes in examining DNA matches. Such a policy is immaterial considering the chain of custody issue associated with Dr. Mortimer and Rowlette's samples.

greater distraction for the jury than would a second DNA test confirming Dr. Mortimer's paternity.[4] As Plaintiffs note "[a]llowing Mortimer to avoid a conclusive paternity test and build doubt as to the accuracy of the results in the juror's eyes would unfairly prejudice the Plaintiffs and could materially affect the outcome of any trial." Dkt. 43, p. 5. By contrast, allowing a technician to swab the inside of his cheek to obtain a DNA sample is a "minimal" invasion of Dr. Mortimer's privacy, particularly considering Dr. Mortimer's past unsolicited willingness to share his DNA with Acenstry.com. *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55, 61 (E.D.N.Y. 2002) (a sample which can be obtained by a cheek swab is only a minimal intrusion on [a] party's privacy rights.") (citing *Hargrave v. Brown*, 783 So.2d 497, 500 (La.Ct.App. 2001)).[5] Moreover, if the DNA test instead established Dr. Mortimer is not Rowlette's biological father, there would be no need for a trial in the first place.

Dr. Mortimer's paternity of Rowlette is fundamental to this case and cannot be conclusively established absent a DNA test untainted by the chain of custody issue inherent in the mail-in DNA testing model. As such, Dr. Mortimer's paternity is "in

---

[4] Further, as Plaintiffs contend "[i]rrespective of whether admitting both pieces of evidence at trial is unnecessarily cumulative under F.R.E. 403, the issue before the Court is whether Plaintiffs are entitled to the opportunity to <u>obtain</u> the competent and reliable evidence of a paternity test through discovery, not whether both tests would be admissible as evidence of paternity." Dkt. 43, p. 5 (emphasis in original).

[5] Although there are privacy issues beyond the actual taking of the sample that are inherent in the DNA context, such sample is crucial to this suit, and "the imposition of appropriate protections that limit the use of . . . DNA information sufficiently addresses such privacy concerns." *McGrath*. 209 F.R.D. at 61.

controversy" and cannot be confirmed by the Ancestry.com results or other alternative means. Good cause thus supports granting Plaintiffs' motion.

## V. ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel a Rule 35 Paternity Test (Dkt. 34) is **GRANTED**. Dr. Mortimer is ordered to submit to a buccal swab paternity test at Wienhoff Drug Testing Services, 461 May Street, Idaho Falls, ID 83401 at a time and date agreed to by the parties.

2. Dr. Mortimer has 30 days to comply with this order.

DATED: January 22, 2019

David C. Nye
Chief U.S. District Court Judge