UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SALLY ASHBY, an individual, and HOWARD FOWLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GERALD MORTIMER, M.D., and OBTESTRICS AND GYNECOLOGY ASSOCIATES OF IDAHO FALLS, P.A., an Idaho professional corporation,<br><br>Defendants. | Case No. 4:18-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Dr. Gerald Mortimer's Motion to Reconsider (Dkt. 45) the Court's Order granting Plaintiffs' Motion to Compel a Paternity Test (Dkt. 44). Having reviewed the parties' briefs and the record, the Court finds good cause to DENY Dr. Mortimer's Motion.

## II. BACKGROUND[1]

Plaintiffs Sally Ashby and Howard Fowler are a formerly married couple who became patients of Dr. Mortimer when they struggled to conceive. Plaintiffs claim Dr. Mortimer inseminated Ashby with his own sperm, without their knowledge or consent,

---

[1] The facts of this case and those relevant to the instant discovery dispute are more fully set forth in the Court's previous orders. *See generally*, Dkt. 40, Dkt. 44.

and that they have since learned, through Ancestry.com, that Dr. Mortimer is likely the biological father of their daughter, Kelli Rowlette. While initially denying Plaintiffs' allegations, Dr. Mortimer refused Plaintiffs' request that he submit to a paternity test to prove or disprove his paternity of Rowlette. Plaintiffs thereafter filed a Motion to Compel Dr. Mortimer's submission to a buccal (cheek) swab DNA test.

Under Federal Rule of Civil Procedure 35, the Court granted the Motion to Compel after finding Dr. Mortimer had placed the issue of his paternity "in controversy" and that there was good cause for ordering a DNA test. Dkt. 44, at 4-9. The Court determined Dr. Mortimer had placed the issue of paternity "in controversy" by denying he had inseminated Ashby and fathered Rowlette in his Answer to Plaintiffs' Complaint and Answers to Plaintiffs' First Requests for Admission. The Court also determined good cause supported ordering a DNA test because Plaintiffs cannot conclusively establish Dr. Mortimer is Rowlette's biological father through other means, including the Ancestry.com results which first notified Plaintiffs of Rowlette's parent-child relationship with Dr. Mortimer. *Id.*, at 6-9.

Dr. Mortimer seeks reconsideration of the Court's Order granting the Motion to Compel based on "new evidence" in the form of Dr. Mortimer's subsequent admission under oath that he is Rowlette's biological father. Dkt. 45-1, at 2. Dr. Mortimer's admission "came through both his amended answers to Plaintiffs' requests for admission and at his deposition on December 11, 2018," after the Motion to Compel had been briefed but before the Court entered its Order compelling Dr. Mortimer to submit to a

DNA test. Dkt. 48, p. 2. Having reviewed the parties' briefing and considering the legal argument cited therein, the Court denies Dr. Mortimer's request for reconsideration.

### III. LEGAL STANDARD

Reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). To support a motion for reconsideration based on newly discovered evidence, the movant must show not only that the evidence was newly discovered or unknown to it prior to filing its opposition to the Motion to Compel, but also that it could not with reasonable diligence have discovered and produced such evidence prior to filing its opposition. *Id.*; *see also Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985). A motion for reconsideration should not be granted "absent highly unusual circumstances[.]" *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999).

### IV. ANALYSIS

Dr. Mortimer seeks reconsideration due to "new evidence on the issue of Rowlette's paternity." Dkt. 45-1, at 2. Specifically, although he previously denied inseminating Ashby with his own sperm, and denied that he is Rowlette's biological father, Dr. Mortimer contends "after further reflection concerning the events of 1980," he now admits his paternal relationship to Rowlette. *Id.*, at 2-3. Dr. Mortimer contends he made such admission through his Amended Responses to Plaintiffs' Request for Admission and in his deposition testimony. Dr. Mortimer argues "[t]his admission makes

the DNA testing previously ordered by the Court unnecessary, and therefore lacking in the requisite good cause under Rule 35 of the Federal Rules of Civil Procedure." *Id*., at 2. Even assuming Dr. Mortimer's recent revelation could be considered "newly discovered evidence," his admission does not conclusively establish paternity, and does not support reconsideration of this Court's Order compelling Dr. Mortimer to submit to a paternity test.

Dr. Mortimer's purported "admission" of paternity in his Amended Responses to Plaintiffs' First Requests for Admission, is far from definitive. Specifically, in Request for Admission No. 16, Plaintiffs asked Dr. Mortimer to admit or deny he inseminated Ashby with his own sperm. Dkt. 47-4, at 4. In Request for Admission No. 23, Plaintiffs asked Dr. Mortimer to admit or deny he fathered the children of more than one of his patients. *Id*., at 6.

Although Dr. Mortimer denied both allegations in his initial Responses, the day before his deposition, Dr. Mortimer filed Amended Responses to Plaintiffs' First Set of Requests for Admission. Dr. Mortimer amended his response to Request for Admission No. 16 to state:

> Dr. Mortimer does not have specific recall about inseminating Ms. Ashby, or any other particular patient, with his own sperm. Dr. Mortimer recalls generally, however, that on occasion he would donate his own sperm when no other sperm donors were available to inseminate his patients who presented to his office and were ovulating and the patients had requested an anonymous donor. He did so for the sole purpose of helping his patients achieve conception. He did not inform anyone in his office of this practice, nor did he inform his patients.

Dkt. 45-2, Ex. C.

Dr. Mortimer's Amended Response to Request for Admission No. 23 asserts, without waiving prior objections, "Dr. Mortimer has no information that he fathered children other than the representation that he fathered Kelli Rowlette and Sarah Felz." *Id*. Dr. Mortimer's "representation" that he fathered Rowlette is not an unqualified admission of paternity in light of his concurrent claim to have no recall of donating sperm to Ms. Ashby.

Nor is Dr. Mortimer's deposition testimony "sufficient to confirm Kelli Rowlette's paternity without assistance of a DNA test" as Dr. Mortimer claims. Dkt. 45-1, at 4. Dr. Mortimer highlights three statements from his deposition to suggest he has admitted his sperm donation resulted in the birth of Rowlette. First:

**Q.     --Kelli Rowlette was your biological daughter?**

A.     Yes, as I remember now.

Dkt. 45-2, at Ex. D, p. 34, ll. 17-19.

When the entire question is reviewed, however, it is evident the aforementioned statement is taken out of context. The full question and response instead read:

**Q.     So you did at one time agree that you would have a paternity test to definitively determine whether --**

A.     Yes.

**Q.     -- Kelli Rowlette was your biological daughter?**

A.     Yes, as I remember now.

*Id.*, at ll. 13-19. Obviously, Dr. Mortimer's admission that he agreed (at one time) to take a paternity test to definitively determine whether Rowlette was his daughter is not an admission of paternity.

Next, Dr. Mortimer quotes his deposition testimony stating:

**Q.   But even without [a paternity test], you believe that you are Kelli Rowlette's biological father?**

A.   Yes.

*Id.*, at p. 36, ll. 21-23. Dr. Mortimer's statement that he *believes* he is Rowlette's father is not a definitive admission of paternity.

Finally, Dr. Mortimer quotes:

**Q.   So at the time you delivered [Rowlette], you knew she was your daughter?**

A.   Yes.

*Id.*, at p. 43, ll. 13-15. Dr. Mortimer's claim that he knew Rowlette was his daughter at the time he delivered her is troubling given his Amended Response to Request for Admission 16, served the day before his deposition, stating he had no specific recall of inseminating Ms. Ashby.[2]

As Plaintiffs highlight, other portions of Dr. Mortimer's deposition only underscore the need for a paternity test. For instance, during his deposition, Dr. Mortimer

---

[2] Following his deposition, Dr. Mortimer has not amended either his answers to Plaintiffs' requests for admission, or his Answer to Plaintiffs' Complaint, wherein he denied both inseminating Ashby and fathering Rowlette.

repeatedly complained of memory problems, admitted he did not recognize Ashby or Fowler, and testified his own prior statements under oath were untrue. Dkt. 47, at 3-9 (quoting relevant passages of Dr. Mortimer's deposition). Given such testimony, any admission of paternity by Dr. Mortimer cannot constitute definitive evidence that Rowlette is his biological daughter. Clearly, Dr. Mortimer's paternity of Rowlette remains "in controversy," and good cause supports the Court's order compelling Dr. Mortimer to submit to a paternity test.

## V. ORDER

**IT IS ORDERED:**

1. Dr. Mortimer's Motion to Reconsider (Dkt. 45) is **DENIED**. Dr. Mortimer is ordered to submit to a buccal swab paternity test at Wienhoff Drug Testing Services, 461 May Street, Idaho Falls, ID 83701 within seven (7) days of the date of this Order.

DATED: April 9, 2019

_____
David C. Nye
Chief U.S. District Court Judge